UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
19-cr-96 (WMW/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S MOTION TO CLARIFY AND AMEND *FRYE/LAFLER* HEARING ORDER** |
| TRAVIS KYLE MAYER, | |
| Defendant. | |

The Government respectfully submits this motion, asking that the Court amended and clarify the allowable procedures at an upcoming hearing. Specifically, the Government asks that it be allowed to inquire of the Defendant if a recent plea deal was fully communicated to him, if he understands the terms of that plea offer, and to confirm that he rejected that offer.

I.   BACKGROUND

On September 19, 2019, the Government met with the Defendant ("Mayer") and his defense counsel. The purpose of the meeting was twofold: (1) allow Mayer and his counsel to review newly discovered evidence against him; and (2) present Mayer with a plea offer. At the meeting, the undersigned presented the plea to Mayer and his defense counsel. The undersigned further explained to them both that if Mayer did not accept this plea, the Government planned to supersede, adding additional charges against him, some of which would carry mandatory life sentences. The Government presented the written plea offer to defense counsel and explained it

in detail. Defense counsel stated that he would confer with his client about the plea offer in more detail over the next several days.

Later that same day, the undersigned wrote defense counsel to confirm the day's events. In that email, the undersigned made clear that the Government's plea offer would expire on September 25, 2019. Defense counsel confirmed receipt of this email and stated that he understood the plea deadline.

On September 25, 2019, the Government had not received a definitive answer as to whether Mayer would accept or reject the proposed plea. The plea expired and was thus effectively rejected. The Government then superseded, bringing the charges it previously described against Mayer.[1] (Dkt. 55).

On September 25, 2019, the Government also filed a motion for a hearing. (Dkt. 54). In relevant part, it requested a hearing to place Mayer's rejection of the Government's plea offer on the record in what is commonly known as a *Frye/Lafler* hearing. (*Id.* at 2). On September 30, the Court issued an order in which it addressed the Government's requested *Frye/Lafler* hearing. (Dkt. 61). The Court explained that it "will allow the Government to make a statement on the record at the October 11 hearing, but the Court will not conduct an inquiry or permit the Government to question Defendant or his attorney."[2] (*Id.*).

---

[1] The Government has since become aware that Mayer may have proposed a "counter offer" to the Government's proposed plea, but the details and timing of that "counter offer" remain unclear. To be clear, and for the record, the Government rejects any "counter offer" proposed by Mayer.

[2] The Court directed that "[i]f the Government believes any additional steps are necessary and appropriate, it should direct its request to the District Judge." (Dkt.

The Government respectfully requests that, consistent with Supreme Court suggested practice and precedent, a record be created that sufficiently documents that the Government's plea offer was communicated to Mayer (including its essential terms), that he had an opportunity to discuss the plea with his counsel, and that Mayer rejected the plea.

## II.   ARGUMENT

In 2012, the Supreme Court issued two opinions that fundamentally changed the landscape of plea-bargaining. First, the Supreme Court held that defense counsel's failure to communicate a plea to a defendant was ineffective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To avoid "late, frivolous, or fabricated" claims that advantageous plea offers were not communicated to a defendant, the Supreme Court offered a series of recommendations including that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id*. at 146.

Second, in a companion case to *Frye*, the Supreme Court held that the right to effective assistance of counsel extended to the plea-bargaining process such that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). Where defense counsel's advice regarding a plea was unconstitutionally

---

61 at 1). Consistent with the Court's order, by filing this request, the Government respectfully requests that the District Court determine this issue.

3

deficient, a defendant's sentence may be adjusted, or a previously rejected plea offer re-extended, where the defendant can establish three elements: (1) that the defendant would have accepted the plea but for counsel's errors; (2) the court would have accepted it; and (3) the penalty in the plea would have been less severe than the one actually imposed. *Id.* at 170–71.

To avoid late, frivolous, or fabricated claims that advantageous plea offers were inadequately presented to defendants, courts should simply adopt the practice recommended by *Frye*—make a complete record of presented and rejected pleas. Failure to do so invites later challenges, where the record is not complete as to the terms of a rejected plea, what the defendant understood about the plea, and how/when the plea was presented. *See, e.g., Allen v. United States*, 854 F.3d 428, 430 (8th Cir.), *cert. denied,* 138 S. Ct. 259 (2017); *Wilson v. United States*, No. 4:13-CV-02164 AGF, 2015 WL 3416931, at *1–8 (E.D. Mo. May 26, 2015); *United States v. Merrell*, No. 14-cr-358(DSD/JJK), 2018 WL 279742, at *2 (D. Minn. Jan. 3, 2018). In contrast, where rejected pleas, their terms, and the circumstances of their presentment and rejection are placed on the record, any later challenge can be quickly dismissed. *See, e.g., United States v. Morgan*, 294 F. Supp. 3d 1218, 1219–26 (D.N.M. 2018) (granting the government's motion for a *Frye/Lafler* hearing whereat the defendant would be required to answer questions regarding a proposed, but rejected, plea offer); *United States v. Croskey*, No. S1-4:11-CR-196 (JCH/DDN), 2013 WL 12214838, at *1 (E.D. Mo. Nov. 15, 2013), *report and recommendation adopted*, No. 4:11-CR-196 (JCH), 2013 WL 12215955 (E.D. Mo. Dec. 3, 2013) (setting forth a series

of facts regarding the parties' recent plea negotiations, including the rejection of a plea, developed during a hearing, in order to satisfy *Frye/Lafler*).

To develop a sufficient record in this matter, and avoid ineffective assistance of counsel claims later, the Government proposes the following. First, the Government will recite the salient terms of the proposed plea offer. Second, Mayer will answer the following questions on the record: (1) Was the plea offer just described communicated to you by your attorney? (2) Do you have sufficient time to discuss the terms of this offer with your attorney? (3) Did you reject the plea offer after consulting with your attorney?

A meaningful record cannot be created if the Government is not allowed to state the terms of the plea offer, confirm the plea was presented to Mayer, and confirm Mayer's rejection of that offer. The Government merely stating the terms of the plea offer and Mayer's rejection of the offer on the record will not address the critical facts—whether the plea was communicated to Mayer, whether Mayer had the opportunity to discuss the offer with his attorney, and Mayer's affirmation that he rejected the plea.

Creating this record will not involve the Court in the plea negotiation process. First, the Government does not intend for there to be any negotiation at the hearing. This inquiry is simply to confirm the negotiations that have already taken place and the result. Second, the Government is prepared to ask the questions above to Mayer, eliminating any involvement by the Court. If the Court wishes, it could preface this part of the hearing with a colloquy wherein it made clear that the Court was not, and

would not be, involved in plea negotiations and was not expressing any opinions about the merits of any plea. *See Morgan*, 294 F. Supp. 3d at 1224 (approving a colloquy by the court about its limited role in the plea process and agreeing to requiring the defendant to answer some limited questions about a plea offer that was rejected). Third, even if the Court were minimally involved in creating this record, it would not risk inappropriate judicial involvement in the plea negotiation process. *See United States v. Draper*, 882 F.3d 210, 215–19 (5th Cir.), *cert. denied*, 138 S. Ct. 2637 (2018) (holding that a magistrate's involvement in a Frye Lafler hearing, so long as it could not be understood as endorsing the plea or the defendant pleading guilty generally, was permissible); *United States v. Nesgoda*, No. 05-cr-403(3) (DSD/RLE), 2008 WL 11427885, at *4 (D. Minn. Jan. 30, 2008), *aff'd*, 559 F.3d 867 (8th Cir. 2009) (holding that the court's questioning of a defendant, before trial, regarding confusion around a plea agreement was not improper under Rule 11).

The benefits of the Government's proposed *Frye/Lafler* hearing are significant, ensuring Mayer is aware of the terms of the plea he was offered and rejected, and heading off later, untimely claims of ineffective assistance of counsel on this point. In contrast, there are essentially no risks or prejudice. The Supreme Court specifically advanced the exact sort of hearing the Government requests here, with the proposed questioning. A *Frye/Lafler* hearing along the terms proposed by the Government is appropriate and necessary.

Dated:  October 10, 2019 	 Respectfully Submitted,

	ERICA H. MacDONALD
	United States Attorney

	*/s/ Alexander D. Chiquoine*

	BY:  ALEXANDER D. CHIQUOINE
	Assistant United States Attorney
	Attorney ID No. 0396420MN
	MELINDA A. WILLIAMS
	Assistant United States Attorney
	Attorney ID No. 491005DC

7