UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Travis Kyle Mayer,<br><br>Defendant. | Case No. 19-cr-0096 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Defendant Travis Kyle Mayer's Motion to Suppress Search and Seizure Evidence [Doc. No. 93] and Motion to Dismiss Counts 1, 2, and 6 [Doc. No. 95]. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that both motions be denied.

**I.      Mayer's Motion to Suppress Evidence**

Mayer moves to suppress evidence obtained through searches of his incoming and outgoing mail that occurred while he was housed in pretrial detention at the Sherburne County Jail ("Jail"). (Def.'s Mot. Suppress at 1 [Doc. No. 93].) The parties are litigating this precise issue in another case, *United States v. Mayer*, No. 19-cr-244 (PAM/DTS),[1]

---

[1] In a Report and Recommendation dated February 21, 2020, U.S. Magistrate Judge David T. Schultz recommended that Mayer's motion to suppress be denied. *United States v. Mayer*, No. 19-cr-244 (PAM/DTS), R. & R. at 10 (D. Minn. Feb. 21, 2020).

and agreed that the evidentiary record and arguments in that case will constitute the complete record and arguments in this case. (*See* Joint Stip., Feb. 3, 2020 [Doc. No. 104].) In accordance with the joint stipulation filed in this matter on February 3, 2020, the parties filed on the docket of this case the legal memoranda, hearing exhibit list, and transcript of the December 5, 2019 hearing before U.S. Magistrate Judge David T. Schultz. (Gov't's Mem. Opp'n Mot. Suppress [Doc. No. 103]; Stip., Ex. List, & Mot. Hr'g Tr. [Doc. No. 104]; Def.'s Mem. Supp. Mot. Suppress [Doc. No. 106].) Copies of the hearing exhibits were delivered to this Court's chambers.

Mayer argues that the searches of his mail were not conducted pursuant to a search warrant and were not permissible under any exception to the warrant requirement of the Fourth Amendment. (Def.'s Mot. Suppress at 1–2.) The Government responds that Mayer had no objective or subjective expectation of privacy in his mail, but even if he did, the warrantless search of his mail was justified by the Jail's security and safety interests and because Mayer was using mail to threaten and intimidate a witness.

### A.     Relevant Facts

#### 1.     FBI Special Agent Dennis Howe's Testimony

FBI Special Agent Dennis Howe testified that he is familiar with the investigation of Mayer for crimes relating to child exploitation and assault of federal officers. (Mot. Hr'g Tr. at 6–7 [Doc. No. 104-2].) He is also familiar with the Jail's policies and practices for monitoring non-privileged mail and phone calls. (*Id.* at 7.)

Mayer has been detained at the Jail since April 2019. (*Id.* at 8.) Before that, he was incarcerated in a Minnesota state prison from 2012 through 2017. (*Id.*) The

Minnesota Department of Corrections has policies and practices that govern the monitoring of outgoing and incoming mail. (*Id.* at 9, 11.) Agent Howe believes that Mayer was given a copy of the Sherburne County Jail Inmate Handbook ("Handbook") shortly after he arrived at the Jail, but he has no direct knowledge of that. (*Id.* at 10, 18–19.) The Handbook notifies inmates that their incoming and outgoing mail is subject to monitoring and review. (*Id.*) Mayer also signed a Tennessen Warning form on April 5, 2019, which notified him that his phone conversations could be monitored. (*Id.* at 13.)

Mayer has written several letters to his mother, brother, and friends while detained at the Jail. (*Id.* at 14.) Some of those letters have been monitored and searched. (*Id.* at 15.) Mayer acknowledged in some letters that he was aware his mail is being reviewed, and he even included direct messages to the prosecutors in some letters to other people. (Gov't Exs. D–H.) Mayer has also acknowledged in monitored phone calls that he knows his mail is being monitored and reviewed. (*Id.* at 16.)

Agent Howe first received copies of Mayer's mail in June 2019. (*Id.* at 23.) A Jail staff officer provided them to the agent via email, and Agent Howe then shared the letters with the prosecution team. (*Id.* at 22–23.) To the best of Agent Howe's recollection, the Government first asked Jail officials to copy Mayer's mail after learning about a letter Mayer sent to Detective Julie Kohl. (*Id.* at 25.) A Jail investigator also told Agent Howe that Jail officials were independently investigating and monitoring Mayer's mail based on Mayer's threats to and attacks on correctional officers. (*Id.* at 26–27.)

### 2. Defendant Mayer's Testimony

Mayer testified that he did not receive a copy of the Handbook when he arrived at

the Jail and that he first received the Handbook on August 14, 2019. (Mot. Hr'g Tr. at 30, 41–42.) Mayer recalled receiving the Handbook on that date because he had specifically requested it. (*Id.* at 31.) He had not seen a copy of the Handbook before August 14, 2019. (*Id.* at 42.)

Mayer submitted as exhibits during the hearing two inmate communication forms known as "kites." On the kite dated August 14, 2019, Mayer requested a Handbook and said he had not been given one since he arrived. (Def. Ex. 1.) The responding officer wrote back that Mayer had been given a Handbook, but he did not indicate when. (*Id.*) On the kite dated November 26, 2019, Mayer asked Sergeant Bjergo to confirm that he gave Mayer a Handbook on August 14, 2019, and Bjergo responded, "Handbook given upon request in August." (Def. Ex. 2.)

Mayer testified to his understanding that the Handbook stated his outgoing mail would be inspected in his presence for contraband. (Mot. Hr'g Tr. at 33.) He testified that the Jail officers' typical practice is to pick up the outgoing mail on their rounds through the cells, open the letters, shake out the contents, hand the letters back to the inmates for sealing, and then remove the letters for mailing. (*Id.* at 34–35.) The officers typically do not read the mail. (*Id.* at 35.)

In mid-June 2019, Mayer noticed it was taking seven to ten days to get his mail, and he began to suspect that Jail staff were hiding or reading his incoming mail. (*Id.*) Officer Ashley Gobel told Mayer between July 18 and 26 that he was on mail watch. (*Id.* at 35–36.) Mayer did not interpret that to mean Jail staff were actually reading his mail, but was taking note of the recipients. (*Id.* at 36.)

4

Mayer testified that in mid-May 2019 he wrote a "disrespectful" letter to Detective Julie Kohl. (*Id.* at 49, 54; Gov't Ex. I.)[2]  The letter contains the following language:

- "Your not even a human, your just an 'it.'  A faggot-fucking Tranny."
- "Just do the world a favor, stop using up our air, food, and other valuable resources, and just kill yourself."
- "And as for your bitch boy Det. Ben Mortinson – how ever you spell his faggot ass name, he should shut his face and kill himself too."
- "You didn't even have the guts to say or do this shit to my face, you know what would have happened."
- "With all due respect, kill yourself."

(Gov't Ex. I [sic throughout].)

Mayer wrote a letter to his mother on June 18, 2019, in which he expressed a suspicion that his mail was being delayed. (Gov't Ex. D.)  He said in the letter that he was "really pissed off, because now I know this jail and/or the Feds are fucking with my mail." (*Id.*)  He threatened to "catch another charge" if his mail was delayed another day. (*Id.*)

Mayer mailed a letter to "Melissa" on June 20, 2019, in which he said he would keep her informed about his case but that "the wrong eyes may see my letters . . . ." (Gov't Ex. E.)  And in a letter mailed to "Tex" on July 21, 2019, Mayer wrote that "[t]he Feds have me on 'Mail Watch,' so my mail is 'Flagged'—heavily monitored." (Gov't

---

[2]  The Government erroneously referred to this exhibit as Exhibit G at the hearing. (Mot. Hr'g Tr. at 49.)

5

Ex. F.)  Finally, in a letter to "Steven" dated August 10, 2019, Mayer wrote,

> Before I leave here, I promise on Dad I'll get even with these fuckers.  And since they and the bitch ass A.U.S.A. . . . wants to read all my letters coming and going out, let them read that and this—they can all suck my dick—you too Ms. Melinda Williams (LOL).

(Gov't Ex. H.)  Mayer confirmed through testimony he had no doubt at that point that his mail was being read and who was reading it.  (Mot. Hr'g Tr. at 68.)

### 3.     The Handbook and the Jail's Policy and Procedure Manual

The Handbook allows inmates or detainees to "send and receive unlimited letters daily except where there is reliable information that there is a threat to order and security or the mail is being used in the furtherance of illegal activity." (Gov't Ex. A. at 7.)  The Handbook requires inmates or detainees to turn over all *outgoing* mail "to jail staff before it is sealed.  Staff will inspect outgoing correspondence in your presence unless there is reason to believe the item might present a threat to the facility's secure or orderly operation, endanger the recipient or the public, or might facilitate criminal activity." (*Id.* at 9.)  With respect to *incoming* mail, the Handbook provides that general correspondence "will be opened by a staff member and inspected for contraband." (*Id.* at 8.)

The Jail's internal Policy and Procedure Manual ("Manual") provides in relevant part that incoming and outgoing mail for an inmate or detainee on "mail watch" may "be held longer due to an active investigation." (Gov't Ex. B at 1.)  In addition, both incoming and outgoing mail "may be . . . inspected for contraband.  Mail is read, censored or rejected when based on legitimate facility interests of order and security." (*Id.*)  When mail is withheld, Jail staff must notify the detainee or inmate via a

"contraband slip." (*Id.*)

### 4. Evidence Submitted After the Hearing[3]

When Mayer was admitted to the Jail on April 5, 2019, the shift supervisor completed an Inmate Tracking and Behavior Log on which he noted that Mayer received a copy of the Handbook. (Gov't Ex. J.) Jail Investigator Michael Sieg verified that Mayer received a Handbook on April 5, 2019. (Gov't Ex. K.) In addition, Handbooks are placed in common areas, and inmates or detainees are free to take copies. (*Id.*)

## B. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To challenge the legality of a search on Fourth Amendment grounds, a defendant must establish that the government violated his reasonable expectation of privacy when it seized the item at issue. *See United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991). The defendant must establish both that (1) he had a subjective expectation of privacy in the place that was searched or the item that was seized; and (2) the subjective expectation is objectively reasonable. *Id.* In light of "the realities of

---

[3] After the evidentiary hearing in *United States v. Mayer*, No. 19-cr-244 (PAM/DTS), the Government filed a motion to reopen the record and admit additional evidence. Gov't's Mot. Reopen, *United States v. Mayer*, No. 19-cr-244 (PAM/DTS) (D. Minn. Dec. 13, 2019), ECF No. 30. Mayer opposed the motion. Def.'s Resp., *United States v. Mayer*, No. 19-cr-244 (PAM/DTS) (D. Minn. Dec. 15, 2019), ECF No. 31. The motion was granted, and Government's Exhibits J and K were submitted. Text-Only Order, *United States v. Mayer*, No. 19-cr-244 (PAM/DTS) (D. Minn. Dec. 15, 2019), ECF No. 32. Government's Exhibits J and K are listed on the exhibit list provided to this Court as part of the parties' stipulation, and Mayer has not objected to this Court's consideration of those exhibits.

7

institutional confinement," a pretrial detainee's expectation of privacy is necessarily diminished in scope. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). As a pretrial detainee, Mayer was subject to the typical safety and security regulations of the Jail. *Id.* at 540.

Mayer concedes that he became aware that his mail was being searched outside his presence in the second half of July 2019, but argues he had a reasonable expectation of privacy in his personal mail until that time. (Def.'s Mem. Supp. Mot. Suppress at 2.) The Court disagrees, at least with respect to his objective expectation of privacy.[4] According to the Inmate Tracking and Behavior Log and the Affidavit of Jail Investigator Michael Sieg, Mayer received a Handbook on April 5, 2019, when he was booked into the Jail. The Handbook authorizes Jail staff to inspect non-privileged incoming mail and all outgoing mail for the security and orderly operation of the Jail. "The clear and obvious implication of the language is that the [Jail] can and will read the contents of a detainee's mail." *United States v. Mayer*, No. 19-cr-244 (PAM/DTS), R. & R. at 7 (D. Minn. Feb. 21, 2020). Based on the intake log and Investigator Sieg's affidavit, this Court believes that Mayer received a Handbook when he was booked into the Jail on April 5, 2019, and finds Mayer's testimony to the contrary not credible. *See id.* at 2. If Mayer chose not to read the Handbook, that would relate to his *subjective* expectation of privacy in his incoming and outgoing mail. But that subjective expectation would not be objectively reasonable, in light of his receipt of the Handbook.

---

[4] The earliest evidence that Mayer suspected his mail was being read—and thus arguably did not have a *subjective* expectation of privacy— is the letter to "Melissa" mailed on June 20, 2019, in which Mayer wrote that "the wrong eyes may see my letters. . . ." (Gov't Ex. E.)

8

Moreover, it is well-established "the inspection of nonprivileged mail does not violate a prisoner's constitutional rights." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *see United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986) (stating "a prisoner's fourth amendment rights are not violated when his mail is inspected by jail officials"). The Eighth Circuit has explicitly acknowledged that "because of their reasonable concern for prison security and inmates' diminished expectations of privacy, prison officials do not violate the constitution when they read inmates' outgoing letters." *United States v. Brown*, 878 F.2d 222, 225 (8th Cir. 1989). Though Mayer is not a "prisoner" or "inmate," he is subject to the same mail policies and procedures as inmates housed at the Jail. *See Bell*, 441 U.S. at 540.

The letter Mayer wrote in mid-May 2019 to Detective Kohl—which was not seized by Jail staff but was provided by Detective Kohl to law enforcement—justified the Jail's seizure and search of Mayer's mail thereafter. Mayer explicitly insulted, threatened, and attempted to intimidate Detective Kohl, a potential trial witness, in the letter. Particularly threatening was the language "You didn't even have the guts to say or do this shit to my face, you know what would have happened." Jail staff had not seized or read Mayer's mail before receiving the letter from Detective Kohl; it was the letter that precipitated the seizures and searches about which Mayer now complains. The letter to Detective Kohl raised reasonable safety and security concerns and thus provided justification for staff to open and read Mayer's outgoing mail. *See United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986).

Mayer faults Jail staff for not following established procedures for seizing and

9

searching his mail.  (Def.'s Mem. Supp. Mot. Suppress at 5–6.)  He does not identify any particular procedure, however, or explain how a deviation from the Handbook would affect his objective or subjective expectation of privacy.

Mayer also contends the Handbook did not explicitly allow Jail staff to provide inmate or detainee correspondence to outside law investigators.  The Court disagrees.  Jail staff does not need authorization from a Handbook that governs the behavior of inmates to share correspondence of a threatening or criminal nature with outside law enforcement.  "In addition, the public safety purpose of mail monitoring also encompasses providing copies of the mail to law enforcement or the prosecution team for purposes of investigation."  *United States v. Mayer*, No. 19-cr-244 (PAM/DTS), R. & R. at 7 (D. Minn. Feb. 21, 2020).

In sum, the Court concludes that the seizures and searches of Mayer's mail did not violate the Fourth Amendment and should not be suppressed.

## II.     Mayer's Motion to Dismiss Counts 1, 2, and 6

Mayer moves to dismiss Counts 1, 2, and 6 of the Second Superseding Indictment for failure to state valid offenses, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).  Before engaging in a discussion of this motion, the Court will briefly set the stage by recounting events related to Mayer's prior motion to dismiss Counts 1, 2, and 6 of the first Superseding Indictment.

A Superseding Indictment [Doc. No. 55] was filed on September 25, 2019, charging Mayer with nine counts:

1. Production and Attempted Production of Child Pornography on or about May 22,

2018, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e);

2. Production and Attempted Production of Child Pornography on or about July 17, 2018, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e);

3. Distribution of Child Pornography on or about August 8, 2018, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1);

4. Possession of Child Pornography on or about August 8, 2018, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2);

5. Transfer and Attempted Transfer of Obscene Matter to a Minor between June 1, 2018, and July 17, 2018, in violation of 18 U.S.C. § 1470;

6. Attempted and Actual Coercion and Enticement from about April 1, 2018, through August 8, 2018, in violation of 18 U.S.C. §§ 2422(b) and 3559(e);

7. Penalties for Registered Sex Offenders for failing to register as a sex offender between June 26, 2018, and July 17, 2018, in violation of 18 U.S.C. § 2260A;

8. Receipt of Child Pornography on or about August 22, 2017, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and

9. Possession of Child Pornography from about August 20, 2017, through August 31, 2017, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

Mayer moved to dismiss Counts 1, 2, and 6 of the Superseding Indictment as multiplicitous. (Def.'s Mot. Dismiss Multiplicitous Counts at 1 [Doc. No. 64].) He argued that that Count 6 was multiplicitous of Counts 1 and 2 because Count 6 alleged the same conduct and was based on the same elements as Counts 1 and 2. (*Id.* at 1–2; *see* R. & R. at 8 [Doc. No. 82].) In a Report and Recommendation dated December 10, 2019, this Court concluded that the offenses charged in Counts 1 and 2 differed in at least four respects from the offense charged in Count 6 and thus recommended that the motion be denied. (*See* R. & R. at 11.) The Honorable Wilhelmina M. Wright, United States

District Judge, adopted the recommendation and denied the motion on February 6, 2020. (Order at 7 [Doc. No. 108].)

A day after this Court issued its Report and Recommendation, a Second Superseding Indictment was filed, charging Mayer with the same or substantially similar crimes as the first Superseding Indictment and adding Count 10 for Obstruction of Justice, in violation of 18 U.S.C. § 1503.  (Second Superseding Indictment, Dec. 11, 2019 [Doc. No. 83].)  On December 18, 2019, this Court entered an arraignment and scheduling setting various deadlines and notifying Mayer that "Count 10 is the only new count in the Second Superseding Indictment.  Therefore, motions may only be filed with regard to Count 10."  (Order at 1, Dec. 18, 2019 [Doc. No. 90].)  Mayer's second motion to dismiss Counts 1, 2, and 6—which is the motion presently before the Court—was timely filed, but did not conform to the Court's directive in its Order of December 18, 2019, that any new motions must relate to Count 10.

At the motion hearing on January 27, 2020, the Court asked Mayer's counsel, Daniel L. Gerdts, why he believed he had the right to file a second motion to dismiss three counts that were the subject of a previous motion to dismiss.  Mr. Gerdts replied that he should have an unfettered opportunity to attack a new indictment, including counts that were previously charged and challenged.  The Court will assume without deciding that Mr. Gerdts has shown good cause to bring the motion and will proceed to the merits.

In general, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .  For each count, the indictment

12

or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). An indictment properly states an offense "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993). A court should deem an indictment sufficient "unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Id.* "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

Mayer contends that the Second Superseding Indictment does not sufficiently allege the crime charged in Count 6—Attempted and Actual Coercion and Enticement, in violation of 18 U.S.C. §§ 2422(b) and 3559(e)—because it does not allege that Mayer believed the minor was less than 18 years old or that Mayer knowingly used a facility and means of interstate commerce. (Def.'s Mem. Supp. Mot. Dismiss at 2.)

Section 2422(b) provides:

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Count 6 of the Indictment tracks the language of the statute, alleging that Mayer

"attempted to and did use a facility and means of interstate and foreign commerce to knowingly persuade, induce, and entice MINOR A, a known 15-year old girl, to engage in sexual activity for which a person can be charged with a criminal offense, namely, the production of child pornography . . . ." The Second Superseding Indictment sufficiently alleges both that Mayer knowingly persuaded, induced, enticed, or coerced Minor A and that Mayer knew Minor A was 15 years old. Though the latter allegation is not explicit in that it describes Minor A as "a known 15-year old girl," it is reasonable to infer that "known" refers to Mayer as the person who knew the age of the girl and that Mayer knew Minor A was a 15-year-old girl. This inference is made even more reasonable by another allegation in the Second Superseding Indictment that describes Minor A as "an individual known to the defendant to be under the age of sixteen." (Second Superseding Indictment at 5.)

To the extent Mayer believes the placement of the word "knowingly" in Eighth Circuit Model Jury Instruction § 6.18.2422B[5] is inconsistent with the statutory language of 18 U.S.C. § 2422(b), he may propose a revision to the jury instruction at trial. This argument has no bearing on whether Count 6 of the Second Superseding Indictment properly states an offense.

Counts 1 and 2 charge Mayer with Production and Attempted Production of Child

---

[5] The relevant part of the instruction reads: "*One*, the defendant knowingly used *[the mail][a computer](describe other interstate facility as alleged in the Indictment)* to *[attempt to][persuade][induce][entice][coerce]* an individual under the age of eighteen (18) years of age to engage in *[prostitution][(describe sexual activity charged in Indictment)]* . . . ." 8th Cir. Model Crim. Jury Instr. § 6.18.2422B (2018).

14

Pornography on two different occasions.  Mayer argues the Second Superseding Indictment does not sufficiently allege the crimes charged in Counts 1 and 2 because there is no allegation that Mayer acted knowingly.  Counts 1 and 2 are brought pursuant to 18 U.S.C. § 2251(a), which provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), *if such person knows or has reason to know* that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Mayer is correct that neither Count 1 nor Count 2 of the Superseding Indictment allege that he knew or had reason to know that the visual depictions would be transmitted using a means or facility of interstate or foreign commerce.  But that is because Mayer is not charged with violating the part of the statute that contains the knowledge element.  The statutory phrase "if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed" is only the first of

three alternatives contained in the latter half of § 2251(a).[6] But Counts 1 and 2 charge Mayer with violating the *second* statutory alternative—"if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer"—and there is no knowledge element in that phrase. Consequently, Count 1 and 2 of the Second Superseding Indictment sufficiently allege violations of § 2251(a).

The Court concludes that Counts 1, 2, and 6 of the Second Superseding Indictment state valid offenses and therefore recommends that Mayer's motion to dismiss be denied.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Travis Kyle Mayer's Motion to Suppress Search and Seizure Evidence [Doc. No. 93] be **DENIED**; and

2. Defendant Travis Kyle Mayer's Motion to Dismiss Counts 1, 2, and 6 [Doc. No. 95] be **DENIED**.

Dated: February 27, 2020           s/ *Hildy Bowbeer*
                                   HILDY BOWBEER
                                   United States Magistrate Judge

---

[6] The three alternatives contained in the latter half of § 2251(a) are: (1) "if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed"; (2) if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer"; or (3) if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.