UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-0096 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Travis Kyle Mayer, | |
| Defendant. | |

This matter is before the Court on Plaintiff United States of America's "Motion to Clarify and Amend *Frye/Lafler* Hearing Order." (Dkt. 69.) Defendant Travis Kyle Mayer opposes the motion. For the reasons addressed below, the motion is denied.

## BACKGROUND

The United States charged Mayer by indictment on April 1, 2019, with distributing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); transferring obscene matter to a minor, in violation of 18 U.S.C. § 1470; and committing a felony offense involving a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A.

It is undisputed that the United States met with both Mayer and defense counsel on September 19, 2019, and presented a plea offer to Mayer in person. It also is undisputed that Mayer did not accept the plea offer before the offer expired on September 25, 2019, when the United States filed a first superseding indictment alleging six additional

counts.[1] The first superseding indictment added two counts of production and attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e); two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2); one count of attempted and actual coercion and enticement, in violation of 18 U.S.C. §§ 2422(b) and 3559(e); and one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).

On the same day that it filed the first superseding indictment, the United States moved for "a *Lafler Frye* hearing where Mayer's plea rejection is placed on the record." In a September 30, 2019 Order, United States Magistrate Judge Hildy Bowbeer ruled that "the Court will allow the Government to make a statement on the record at the October 11 [arraignment] hearing, but the Court will not conduct an inquiry or permit the Government to question Defendant or his attorney." At the October 11, 2019 arraignment hearing, in the presence of Mayer and defense counsel, the magistrate judge permitted the United States to make the following record:

> So just to make the record, then, on the *Frye/Lafler* issue. So on September 19, 2019 the government presented a plea offer to Mr. Mayer. It set an expiration date of 9:00 a.m. September 25, 2019 on this offer.
>
> The offer was to plead guilty to all counts as the Indictment stood at that time in Case No. 19-CR-96, this matter, as well as a pending assault against a federal officer case against Mr. Mayer, 19-CR-244.
>
> The terms of the plea for 19-CR-96 was that he would plead guilty to the distribution of child pornography charge, the transfer of obscene material to a minor charge, and the 2260A. This would result in a

---

[1] The United States filed a second superseding indictment on December 11, 2019. The additional counts alleged in the second superseding indictment are not relevant to the pending motion.

2

mandatory minimum sentence of 25 years. His total adjusted offense level would have been 37, Criminal History Category of V, resulting in a guidelines range of 324 months to 405 months. It would have also required a joint recommendation of lifetime supervised release for Mr. Mayer.

In the other matter, 19-CR-244, Mr. Mayer would have been required to plead guilty to assault on a federal officer. That carries an eight-year statutory max. His total adjusted offense level in that case would have been 16, Criminal History Category of V, and guidelines of 41 to 51 months with one to three years of supervised release.

The pleas would have also required a joint recommendation that these sentences run consecutive to one another, although, of course, that issue as well as the guidelines sentences or whatever sentence Mr. Mayer would have received would of course ultimately be up to the Court to decide.

And as of the expiration date at 9:00 a.m. on September 25th, the government had not heard anything back from Mr. Mayer or his counsel and therefore the plea was considered rejected and withdrawn.

The magistrate judge provided defense counsel an opportunity to respond on behalf of Mayer. Defense counsel indicated that he had nothing to add.

According to the United States, because Mayer was not directly questioned, the record made at the October 11, 2019 arraignment hearing is insufficient "to avoid the very real threat and inconvenience of late-filed and/or frivolous ineffective assistance of counsel claims." As such, the United States now requests that the Court order Mayer to appear for a hearing at which the United States will be permitted to ask Mayer three questions directly: (1) whether the plea offer as described by the United States was communicated to Mayer by his attorney, (2) whether Mayer had sufficient time to discuss the terms of the offer with his attorney, and (3) whether Mayer rejected the plea offer after consulting with his attorney. Mayer opposes the motion, arguing that such an

inquiry is unnecessary and would risk infringing Mayer's Fifth Amendment right to remain silent, violating the attorney-client privilege, and violating the Federal Rules of Criminal Procedure.

## ANALYSIS

In support of its motion, the United States relies on *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye*, 566 U.S. 134 (2012), in which the Supreme Court of the United States held that the right to counsel, protected by Sixth Amendment to the United States Constitution, entitles a defendant to effective assistance of counsel in the plea-negotiation context. *See Lafler*, 566 U.S. at 165–68; *Frye*, 566 U.S. at 145. In *Lafler*, the defendant received information about the terms of a plea-agreement offer but rejected it on the advice of counsel. 566 U.S. at 160. The Supreme Court held that when "a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168. In *Frye*, the defendant's attorney failed to communicate a plea-agreement offer to the defendant before the offer expired. 566 U.S. at 139. The Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that if "defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the Constitution requires." *Id.* at 145. Notably, both *Lafler* and *Frye* involved post-conviction petitions alleging ineffective assistance of counsel. *See Lafler*, 566 U.S. at 162; *Frye*, 566 U.S. at 139.

Unlike the circumstances in *Lafler* and *Frye*, the pending motion in this case seeks a *pretrial* inquiry of Mayer about the plea-agreement offer that was presented to him. Accordingly, the issue before the Court is whether making a pretrial record of the terms of a plea-agreement offer is either required or merely permitted by *Lafler* and *Frye* and, if so, what the scope of such a pretrial record should be.

In *Frye*, the Supreme Court observed that "[t]he prosecution and the trial courts *may* adopt some measures to help ensure against late, frivolous, or fabricated claims." *Id.* at 146 (emphasis added). In doing so, the Supreme Court suggested several measures including, as relevant here, that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id.* But the *Frye* decision does not *require* a district court to do anything, let alone mandate a particular procedure that a district court must undertake, when a plea-agreement offer is not accepted. Nor does the *Frye* decision suggest that a district court should *force* a defendant to participate in a colloquy involuntarily. Instead, the Supreme Court left it in a district court's discretion to adopt appropriate measures. The United States has not identified any legal authority to the contrary, nor is the Court aware of any. As such, the Court must determine whether, and to what extent, to exercise that discretion here.

As Mayer correctly observes, although the *Frye* decision suggests that a plea-agreement offer could be "made part of the record," the Supreme Court did not specify the manner in which that should be accomplished or how detailed any such inquiry should be. Nor does there appear to be any binding authority in this Circuit that

5

addresses this issue. District courts in other jurisdictions have conducted colloquies with defendants that are similar to the colloquy advocated by the United States in this case. *See, e.g.*, *Stevens v. United States*, No. 2:15cv28, 2015 WL 4361560, at *8 (E.D. Va. July 13, 2015); *United States v. Hopkins*, No. 12-CR-0044, 2015 WL 3772622, at *16–17 (N.D. Okla. June 17, 2015). But those decisions offer little guidance here because the defendants in those cases did not oppose the inquiries. In the absence of any opposition to a colloquy, the district courts' decisions in those cases do not analyze the scope or necessity of the inquiry or the competing interests implicated by it.

Several district courts have ordered a defendant to participate in a limited *Frye* colloquy over the defendant's objection. *See, e.g.*, *United States v. Morgan*, 294 F. Supp. 3d 1218, 1226–27 (D.N.M. 2018); *United States v. Pirk*, 236 F. Supp. 3d 796, 799–801 (W.D.N.Y. 2017).[2] In *Morgan*, the district court held that a "carefully constructed colloquy," limited to "establish[ing] the terms of the plea offer, the fact that it was communicated to Defendant, and the fact that Defendant rejected the plea offer, is supported by the principles announced in [*Lafler* and *Frye*]." 294 F. Supp. 3d at 1222, 1226. Similarly, in *Pirk*, the district court granted in part and denied in part the government's motion for a colloquy with the defendants about the plea-agreement offers made to them. 236 F. Supp. 3d at 802. In particular, the district court granted the government's motion only to the extent that the government sought to "memorialize the

---

[2]   *But see United States v. Broombaugh*, No. 14-40005-10, 2014 WL 3107963, at *3–4 (D. Kan. July 8, 2014) (denying government's motion for pretrial *Frye*/*Lafler* hearing), *amended in part by sub nom. United States v. Reulet*, No. 14-40005, 2016 WL 126355, at *11 (D. Kan. Jan. 11, 2016) (granting government's request for a *Frye*/*Lafler* hearing before trial).

6

terms of the plea offer made to each defendant and confirm that defense counsel adequately communicated the offer to his respective client." *Id.* at 799. But the district court denied the government's motion "to the extent it sought to delve into any further details concerning the discussions between defense counsel and his client." *Id.*

Here, it is undisputed that a plea-agreement offer was conveyed by the United States directly to Mayer, in person, and in the presence of Mayer's lawyer. At the October 11, 2019 arraignment hearing, the United States made a record of the details of that plea offer and Mayer's implied rejection of that offer. Mayer and defense counsel were present at that hearing and were provided an opportunity to respond or add to the representations made by the United States. According to Mayer, any additional direct inquiry of Mayer would risk infringing Mayer's Fifth Amendment right to remain silent, violating the attorney-client privilege, and violating the Federal Rules of Criminal Procedure. The Court addresses each of Mayer's arguments in turn.

Mayer first argues that the colloquy proposed by the United States would risk violating his Fifth Amendment right to remain silent. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189 (2004). Here, the United States seeks only to inquire whether its plea-agreement offer was communicated to Mayer, whether Mayer had sufficient time to discuss the terms of the offer with his attorney, and whether Mayer rejected the offer. There is no basis to conclude that the limited inquiry of Mayer

proposed by the United States would risk eliciting an incriminating statement. *See Morgan*, 294 F. Supp. 3d at 1224–25 (rejecting Fifth Amendment argument in similar circumstances). As such, Mayer's Fifth Amendment argument does not preclude the Court from granting the United States's motion.

Mayer also contends that the colloquy sought by the United States would violate the attorney-client privilege. Importantly, not all communications between an attorney and the attorney's client are privileged. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *United States v. Bartlett*, 449 F.2d 700, 704 (8th Cir. 1971). To be protected by the attorney-client privilege, the communication must relate to legal services or advice. *See Diversified Indus.*, 572 F.2d at 602; *Bartlett*, 449 F.2d at 704; *see also Wells Fargo & Co. v. United States*, No. 09-CV-2764, 2014 WL 2855417, at *6 (D. Minn. June 16, 2014) (explaining that "communications with an attorney that do not involve the elicitation or provision of legal advice are not privileged"). Communications between an attorney and a client generally are protected if they "tend directly or indirectly to reveal the *substance* of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) (emphasis added); *accord Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (en banc) (concluding that documents were privileged "because disclosure would reveal directly or inferentially the *contents* of" attorney-client communications (emphasis added)). Thus, questions that merely "establish the terms of the plea offer and whether it was relayed to Defendant should not reveal legal advice from defense counsel or the substance of a client confidence."

*Morgan*, 294 F. Supp. 3d at 1224 (internal quotation marks omitted) (rejecting privilege argument in similar circumstances).

Here, the United States proposes a limited inquiry of Mayer about whether the plea-agreement offer was communicated to him, whether he had sufficient time to discuss the terms of the offer with his attorney, and whether he rejected the offer. This inquiry can be accomplished without revealing, directly or implicitly, the *substance* of any legal advice sought by Mayer or provided by his attorney.[3] If the colloquy is narrowly tailored as described above, Mayer's attorney-client-privilege argument does not preclude the Court from granting the United States's motion.

Mayer also argues that the colloquy proposed by the United States would violate Rule 11(c)(1) of the Federal Rules of Criminal Procedure, which provides: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. *The court must not participate in these discussions.*" Fed. R. Crim. P. 11(c)(1) (emphasis added). The Eighth Circuit has "strictly construed [Rule 11(c)(1)] to require an absolute prohibition upon district court participation in plea negotiations, either with counsel or in the presence of the defendant." *United States v. Nesgoda*, 559 F.3d 867, 869 (8th Cir. 2009). Here, the

---

[3] The memoranda of law filed by the United States are inconsistent as to the proposed scope of this inquiry. In some instances, the United States asserts that Mayer would be asked only whether he received the plea-agreement offer and whether he had sufficient time to discuss the offer with his attorney. In other instances, the United States suggests that Mayer should be asked what he "understood" about the plea-agreement offer and "how" it was presented to him. These latter questions proposed by the United States in its memoranda implicate the substance of Mayer's discussion with his attorney and would unduly risk invading the attorney-client privilege. But if narrowly tailored as described above, a colloquy *could* be accomplished without such risks.

9

colloquy proposed by the United States would not involve a plea negotiation, but instead would memorialize facts pertaining to negotiations that occurred in the past. And these facts would be memorialized by the United States, not the Court, together with three "yes" or "no" responses from Mayer. On its face, this procedure would not require the Court to participate in a plea negotiation. *Cf. id.* (explaining that no violation of Rule 11(c)(1) occurred when "[t]he district court did not inject [its] own terms into the plea agreement," but instead "merely explained the effect of the terms already on the table"). As such, Mayer's Rule 11(c)(1) argument does not preclude the Court from granting the United States's motion.

The colloquy proposed by the United States is in accordance with *Frye* and is not foreclosed by the Fifth Amendment, attorney-client privilege, or the Federal Rules of Criminal Procedure. This conclusion does not end the analysis, however. The fact that the Court *may* order Mayer to appear at a hearing to answer the United States's questions does not necessarily mean that the Court *should* do so. In addition to the arguments addressed above, Mayer contends that the colloquy sought by the United States is neither necessary nor useful. The Court agrees. Several reasons weigh against granting the United States's motion.

First, unlike the circumstances in *Frye*, in which the defense attorney did not convey the plea-agreement offer to the defendant, it is undisputed that both Mayer and his attorney were present when the United States made its plea-agreement offer on September 19, 2019. A record of this fact was made by the United States at the October 11, 2019 arraignment hearing and in the parties' briefing on the pending motion. The

only counterargument offered by the United States is that "the details of the plea, of which there were many . . . were left for Mayer to discuss with his attorney." But this argument is not germane because the first proposed question would not inquire into these details. Moreover, any such inquiry would risk, either directly or indirectly, revealing attorney-client privileged information. The United States has not demonstrated what value would be added by forcing Mayer to corroborate a fact on the record when his attorney has already done so. A represented defendant speaks through his or her counsel, and Mayer has done so here with respect to this issue. The United States has not demonstrated that its first proposed colloquy question would be necessary or useful.

Second, the United States has not established the utility of forcing Mayer to confirm, on the record, that he had sufficient time to discuss the plea-agreement offer with his attorney. One week transpired between Mayer's receipt of the plea-agreement offer and the expiration of that offer, which suggests that Mayer and his attorney had an opportunity to discuss the offer. Even if Mayer were to directly acknowledge this fact on the record, it is unclear what this acknowledgement would have accomplished.[4] As the United States recognizes, postconviction ineffective-assistance-of-counsel claims often require "evidentiary hearings where attorney-client privilege is severed and defense attorneys are compelled to testify against their former clients." Asking Mayer now whether he had enough time to discuss the plea-agreement offer with his attorney would reveal nothing about the *substance* of those discussions and, therefore, would not prevent

---

[4] Moreover, the United States has not suggested what might happen if Mayer were to respond that he *did not* have sufficient time to discuss the plea-agreement offer with his attorney.

11

the need for such an inquiry in the event of a future ineffective-assistance-of-counsel claim. For these reasons, the United States has not demonstrated that its second proposed colloquy question would be necessary or useful.

Finally, the necessity and utility of the third question proposed by the United States also is unclear. The United States wants Mayer to confirm that he rejected the plea-agreement offer. But the United States has already made a record, at the October 11, 2019 arraignment hearing, that the United States presented the plea-agreement offer directly to Mayer on September 19, 2019, set an expiration of 9:00 a.m. on September 25, 2019, and did not receive any response from Mayer or his counsel before that expiration date and time. Mayer and his attorney were present when the United States made this record and offered no opposition or amendment to these representations. Although it is undisputed that Mayer did not accept the plea-agreement offer, the United States suggests that forcing Mayer to directly corroborate this fact on the record will somehow avert a future ineffective-assistance-of-counsel claim by Mayer. But as addressed above, any pretrial colloquy necessarily will exclude any inquiry, either directly or indirectly, into the substance of privileged attorney-client communications. As such, forcing Mayer to confirm that it was, in fact, his intent to reject the plea-agreement offer seemingly would do little to prevent Mayer from later claiming that he was inadequately advised with respect to that decision. Accordingly, the United States has not demonstrated that its third proposed colloquy question would be necessary or useful.

In summary, the colloquy proposed by the United States, if properly limited in scope, is in accordance with (but not required by) *Frye* and is not foreclosed by the Fifth

Amendment, the attorney-client privilege, or Rule 11(c) of the Federal Rules of Criminal Procedure. However, in light of the existing record of the plea-agreement offer and its rejection by Mayer, the United States has not persuasively demonstrated that such a colloquy would be either necessary or useful in this case. Therefore, United States's motion is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Plaintiff United States of America's "Motion to Clarify and Amend *Frye/Lafler* Hearing Order," (Dkt. 69), is **DENIED**.


Dated: March 25, 2020                                       s/Wilhelmina M. Wright
                                                                                      Wilhelmina M. Wright
                                                                                      United States District Judge