UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-0096 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| Travis Kyle Mayer, | |
| Defendant. | |

This matter is before the Court on the February 27, 2020 Report and Recommendation (R&R) of United States Magistrate Judge Hildy Bowbeer. (Dkt. 112.) The R&R recommends denying Defendant Travis Kyle Mayer's motion to suppress evidence and motion to dismiss Counts 1, 2, and 6 of the second superseding indictment. Mayer filed timely objections to the R&R. For the reasons addressed below, Mayer's objections are overruled and the February 27, 2020 R&R is adopted.

## BACKGROUND

The United States charged Mayer by indictment on April 1, 2019, with distributing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); transferring obscene matter to a minor, in violation of 18 U.S.C. § 1470; and committing a felony offense involving a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A. Mayer has been detained at the Sherburne County Jail (the jail) since April 2019.

On September 25, 2019, the United States filed a first superseding indictment alleging six additional counts. In particular, the first superseding indictment adds two counts of production and attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e); two counts of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2); one count of attempted and actual coercion and enticement in violation of 18 U.S.C. §§ 2422(b) and 3559(e); and one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Mayer moved to dismiss Count 6 of the first superseding indictment, arguing that it is based on the same conduct that is alleged in Count 1 and Count 2 of the first superseding indictment. Mayer also moved to suppress two mobile phones that were seized from him in September 2017 and September 2018. On February 6, 2020, this Court adopted the magistrate judge's recommendation to deny those motions.

The United States filed a second superseding indictment on December 11, 2019. The second superseding indictment adds one count of obstruction of justice in violation of 18 U.S.C. § 1503. Mayer now moves to dismiss Counts 1, 2, and 6 of the second superseding indictment, which allege that Mayer produced and attempted to produce child pornography on May 22, 2018, and July 17, 2018 (Counts 1 and 2, respectively), and that Mayer attempted to and actually coerced and enticed a minor to engage in sexual activity from on or about April 1, 2018 through on or about August 8, 2018 (Count 6). Mayer also moves to suppress evidence obtained by the United States through searches of Mayer's incoming and outgoing mail during his pretrial detention at the jail.

Following an evidentiary hearing, the magistrate judge issued the pending R&R, which recommends denying both motions.  In particular, the R&R determines that Mayer lacked a reasonable expectation of privacy in his incoming and outgoing mail during the period that he was in custody at the jail.  The R&R also determines that the United States has sufficiently pleaded the charges alleged in Counts 1, 2, and 6 of the second superseding indictment.  Mayer filed timely objections to the R&R, and the United States responded.

## ANALYSIS

This Court reviews de novo those aspects of the R&R to which Mayer objects.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).  Mayer objects to the R&R's recommendations to deny both his motion to suppress evidence and his motion to dismiss Counts 1, 2 and 6 of the second superseding indictment.  The Court addresses each objection in turn.

### I.      Motion to Suppress Evidence

Mayer objects to the R&R's determination that he lacked a reasonable expectation of privacy in his incoming and outgoing mail while he was in custody at the jail.[1]

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[1] Mayer's objections baselessly and gratuitously assert, among other things, that "it is as if the magistrate [judge] failed entirely to read Defendant's motion."  Defense counsel's obligation to zealously advocate for his client does not include disrespectful argument, whether directed at the magistrate judge or anyone else.  The Court will not tolerate such discourteous conduct, as counsel for each party is expected to act with proper decorum.

searches and seizures." U.S. Const. amend. IV. "To establish a violation of rights under the Fourth Amendment, a person must have a constitutionally protected reasonable expectation of privacy in the area searched or the items seized." *United States v. Sesay*, 937 F.3d 1146, 1151 (8th Cir. 2019) (internal quotation marks omitted). When analyzing whether a search violates the Fourth Amendment, courts "weigh the degree to which [the] search intrudes upon [the] individual's reasonable expectation of privacy against the degree to which the government needs to search to promote its legitimate interests." *United States v. Collier*, 932 F.3d 1067, 1073 (8th Cir. 2019) (internal quotation marks omitted). When analyzing whether a defendant had a reasonable expectation of privacy that was violated by a search or seizure, a district court determines whether the defendant "asserted a subjective expectation of privacy in the place searched or object seized" and whether the defendant's "subjective expectation is objectively reasonable." *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014) (internal quotation marks omitted). It is a defendant's burden to establish both the subjective element, which is a question of fact, and the objective element, which is a question of law. *Id.*

Mayer's objections do not clearly distinguish between his *subjective* expectation of privacy and whether that expectation was *objectively* reasonable. But, as is relevant to the subjective element, Mayer concedes that in late July 2019 "he became aware that his mail was being pulled out of the stream of postal commerce, and was subject to scrutiny and searches outside of his presence." As the R&R observes, there is evidence that Mayer suspected his mail was being read as early as June 20, 2019, when he wrote in one letter that "the wrong eyes may see my letters as well as the wrong ears hearing my calls &

4

visits." The magistrate judge did not make an express finding as to whether Mayer had a subjective expectation of privacy in his mail before late July 2019, nor is such a finding necessary if Mayer had no *objectively reasonable* expectation of privacy in his mail before that time. *Douglas*, 744 F.3d at 1069. For this reason, the focus of the Court's analysis is on whether Mayer had an objectively reasonable expectation of privacy in his incoming and outgoing jail mail before late July 2019.

It is well-established that "a prison inmate has a far lower expectation of privacy than do most other individuals in our society." *LeVine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008). This lower expectation of privacy extends to searches involving pretrial detainees in addition to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 540, 545–46, 555–57 (1979). As the R&R correctly observes, the United States Court of Appeals for the Eighth Circuit repeatedly has held that "the inspection of nonprivileged mail does not violate a prisoner's constitutional rights." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *accord United States v. Brown*, 878 F.2d 222, 225 (8th Cir. 1989) (recognizing that "because of their reasonable concern for prison security and inmates' diminished expectations of privacy, prison officials do not violate the constitution when they read inmates' outgoing letters"); *United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986) (holding that inspection of inmate's mail by jail officials does not violate Fourth Amendment rights). Mayer does not challenge the applicability of this legal authority or cite any contrary authority, nor has the Court's research identified any legal authority to the contrary. As such, the objective reasonableness of Mayer's expectation of privacy in

the contents of his mail must be evaluated in the context of his diminished expectation of privacy as an inmate.

In addition, when an inmate agrees to permit his or her communications to be monitored or recorded, the inmate has no objectively reasonable expectation of privacy in those communications. *United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999). Notably, an inmate impliedly consents to the monitoring of his or her communications when the inmate is on notice of the applicable monitoring policies and chooses to use a monitored means of communication. *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992).

The record reflects that Mayer consented to the monitoring of his incoming and outgoing communications. He does not challenge the R&R's finding that he received a copy of the Sherburne County Jail Inmate Handbook (handbook) on April 5, 2019, nor does Mayer challenge the R&R's determination that his testimony to the contrary was not credible.[2] The handbook provides that an inmate's incoming and outgoing mail will be inspected by jail staff. Notably, the handbook requires inmates to provide unsealed outgoing mail to jail staff for inspection of the mail's contents, and the handbook permits jail staff to physically open and inspect the contents of an inmate's incoming mail.[3]

---

[2] These findings are amply supported by evidence in the record, which includes the affidavit of the jail's investigator, Michael Sieg, and the Inmate Tracking Sheet and Behavior Log attached to the affidavit. This evidence reflects that Mayer received the handbook on April 5, 2019. According to Sieg, the handbook, "which inmates are free to take," also is "widely available to inmates . . . in inmate common areas."

[3] In his objections, Mayer suggests that the jail's "inspection" of mail has not included reading the contents of letters, but instead the jail staff merely "shook" envelopes to ensure

Consistent with the handbook, the jail's internal policies and procedures provide that incoming and outgoing mail, including the contents of letters, are subject to inspection and possible confiscation. Moreover, in addition to obtaining the handbook when he was booked, Mayer signed an acknowledgement that his non-privileged telephone and video calls would be subject to monitoring and recording and that he should "handle [his] communication practices accordingly." The totality of these facts demonstrates that Mayer was on notice of and consented to the monitoring of his incoming and outgoing communications while in custody at the jail.[4]

The combination of Mayer's diminished expectations of privacy as an inmate and his consent to the monitoring of his communications is sufficient to conclude that he lacked an objectively reasonable expectation of privacy in his incoming and outgoing mail during his entire period of pretrial custody at the jail. The Court's conclusion, nonetheless, has additional support that is evident when Mayer's expectation of privacy is weighed against

---

they contained no contraband objects. The record belies this suggestion. The handbook clearly states that jail staff are permitted to search the contents of both incoming and outgoing mail for anything that might threaten the jail's secure and orderly operation, endanger the recipient or the public, or facilitate criminal activity. Mail contents also may be inspected for "contraband," which the handbook defines to include, among other things, pictures, drawings, symbols, stickers, or "any article [that] an inmate is not authorized to have in his/her possession." Thus, inspecting mail for threatening or contraband material necessarily may include inspecting the contents of letters.

[4]   Mayer's objections emphasize alleged disparities between the jail's written policies and the procedures Mayer observed in practice, including whether the inspection of mail occurred outside Mayer's presence, whether jail staff were permitted to disclose the contents of inspected mail to outside investigators, and whether the inspection of Mayer's mail was motivated by something other than jail security. Even if these arguments have some bearing on Mayer's *subjective* expectations of privacy, they have no material bearing on whether his expectations of privacy were *objectively reasonable*.

the jail's legitimate security interests. *See Collier*, 932 F.3d at 1073 (providing that a court should weigh the degree to which the search intrudes on reasonable privacy expectations against the degree to which the search is necessary to promote the government's legitimate interests). Here, the record reflects that Mayer sent a letter to Detective Julie Kohl in May 2019 that Mayer argues was merely "disrespectful[ ]" and "may have hurt [the detective's] feelings." Mayer's characterization of this letter is unfounded. Mayer's letter is threatening, intimidating, and vulgar. The Court agrees with the magistrate judge's finding that Mayer's letter "explicitly insulted, threatened, and attempted to intimidate Detective Kohl, a potential trial witness" and "raised reasonable safety and security concerns." Both the jail and the United States had a legitimate interest in inspecting the contents of Mayer's outgoing mail in light of his threatening letter to Detective Kohl, and that interest heavily outweighs the privacy interest (if any) that Mayer may have had in the contents of his mail.

Because Mayer lacked an objectively reasonable expectation of privacy in the contents of his incoming and outgoing mail while he was in custody at the jail, his motion to suppress this evidence lacks merit. Mayer's objections to this aspect of the R&R are overruled.

**II.     Motion to Dismiss Counts**

Mayer also objects to the R&R's conclusion that the United States sufficiently pleads the charges alleged in Counts 1, 2, and 6 of the second superseding indictment. Mayer argues that the *mens rea* elements of these counts are insufficiently pleaded.

"An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which

[the defendant] must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019) (internal quotation marks omitted).  Generally, an indictment that sets forth the offense using the words of the statute is sufficient "as long as the elements of the offense are delineated and the general statement is accompanied by the specific facts constituting the offense." *United States v. Huggans*, 650 F.3d 1210, 1218 (8th Cir. 2011) (internal quotation marks omitted).  An indictment need not use the precise words of the statute as long as the indictment alleges an offense "by fair implication" when considered along with a citation to the applicable statute and "the other allegations in the indictment as a whole." *United States v. Villarreal*, 707 F.3d 942, 957 (8th Cir. 2013) (internal quotation marks omitted).

Mayer argues that Counts 1 and 2, which allege that he produced and attempted to produce child pornography on two distinct dates, fail to allege that Mayer "knowingly" employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct.  Regarding this aspect of the offense, the statutory language pertains to "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . sexually explicit conduct."  18 U.S.C. § 2251(a).  Counts 1 and 2 of the second superseding indictment use language consistent with this statutory language and, like the statute, these counts do not contain the word "knowingly" with respect to this element of the offense.  An indictment that uses the language of the applicable statute is not defective when it omits a defendant's mental state, even when the defendant's mental state, while not appearing in the statute, is an essential element of the offense.  *See United*

9

*States v. Donahue*, 948 F.2d 438, 440–41 & n.2 (8th Cir. 1991) (observing that an "indictment is not fatally defective, though it fails to allege felonious intent, if its wording parallels the statute" (internal quotation marks omitted)); *United States v. Garrison*, 527 F.2d 998, 999 (8th Cir. 1975) (observing that, although "knowledge is an essential element of the crime of aiding and abetting, it is not part of the statutory language . . . and need not be alleged in the indictment" (internal citations omitted)).  As such, any reference to a defendant's knowledge in the model jury instructions is immaterial to determining whether the allegations in the second superseding indictment are legally adequate.

Even if the United States were required to plead that Mayer "knowingly" employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct, when the indictment is considered as a whole, such knowledge is sufficiently alleged "by fair implication."  *Villarreal*, 707 F.3d at 957; *accord United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (holding that the indictment "alleged sufficient facts to show [defendant's] knowledge" by alleging facts that demonstrate circumstantial evidence of knowledge); *Donahue*, 948 F.2d at 441 (recognizing that certain criminal acts inherently incorporate a defendant's requisite mental state "absent a well-founded plea of insanity or coercion").  Counts 1 and 2 of the second superseding indictment allege that Mayer acted with "the purpose of producing a visual depiction of" a known minor engaging in sexually explicit conduct.  Mayer's knowledge is inherent in such purposeful conduct.  *Cf. Donahue*, 948 F.2d at 441 (observing that "absent a well-founded plea of insanity or coercion, . . . it is inconceivable that anyone lacking criminal intent could commit armed bank robbery; the act itself, being inherently and essentially evil, demonstrates the criminal

intent of the actor"). Moreover, each count cites the relevant statute and uses language that is consistent with the statutory language. Accordingly, the allegations in Counts 1 and 2 are legally sufficient.[5]

Mayer also argues that Count 6 of the second superseding indictment, which alleges that he coerced and enticed a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), fails to allege two elements of the offense—that Mayer "knowingly" used a facility and means of interstate commerce and that he knew the alleged victim was a minor. The statute describes the offense, in relevant part, as "using the mail or any facility or means of interstate or foreign commerce" to coerce or entice "any individual who has not attained the age of 18 years." 18 U.S.C. § 2422(b). Consistent with this statutory language, Count 6 does not refer to a defendant's knowledge as to these aspects of the offense. Because the allegations in Count 6 are consistent with the statutory language, Count 6 is not defective for omitting any reference to Mayer's knowledge of the use of interstate commerce or the age of the alleged victim, even if such knowledge is an essential element of the offense. *Donahue*, 948 F.2d at 440–41 & n.2; *Garrison*, 527 F.2d at 999. The model jury instructions, to the extent that they reference a defendant's knowledge as to these elements of the offense, do not govern whether the allegations in the second superseding indictment are legally adequate.

---

[5] Mayer contends that, because the R&R's analysis of Counts 1 and 2 focuses on the incorrect element of the offense, the analysis does not precisely address Mayer's argument. But because this Court reaches the same result as the R&R for the reasons addressed above, this disparity is immaterial.

11

Moreover, although not required, the second superseding indictment sufficiently alleges "by fair implication" Mayer's knowledge as to these elements. *See Villarreal*, 707 F.3d at 957; *accord Palmer*, 917 F.3d at 1039. The second superseding indictment alleges that Mayer used means of interstate commerce, including a cellular telephone, to communicate with a minor victim with whom he exchanged sexually explicit images and videos. Mayer's knowledge of the use of a cellular telephone is implied. A conclusion to the contrary is inconceivable. And, as the R&R correctly observes, the allegations in Count 6 describe the minor victim as "a known 15-year old girl," from which it is *Mayer's* knowledge that is fairly implied. In addition, Count 5 alleges that the alleged minor victim was "known to the defendant to be under the age of sixteen." And Count 6 cites and uses language consistent with the relevant statute, 18 U.S.C. § 2422(b). The allegations in Count 6 are legally sufficient.

In summary, because Counts 1, 2, and 6 of the second superseding indictment are not deficient, Mayer's motion to dismiss these counts fails and his objections to this aspect of the R&R are overruled.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant Travis Kyle Mayer's objections to the February 27, 2020 R&R, (Dkt. 112), are **OVERRULED**.

2. The February 27, 2020 R&R is **ADOPTED**.

3. Mayer's motion to suppress evidence, (Dkt. 93), is **DENIED**.

    4.    Mayer's motion to dismiss counts, (Dkt. 95), is **DENIED**.

Dated: May 18, 2020

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge
