# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-0096 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| Travis Kyle Mayer, | |
| Defendant. | |

This matter is before the Court on Defendant Travis Kyle Mayer's motion to dismiss the indictment against him based on alleged violations of his right to a speedy trial. (Dkt. 194.) Plaintiff United States of America opposes Mayer's motion. For the reasons addressed below, Mayer's motion to dismiss the indictment is denied.

## BACKGROUND

A grand jury returned an indictment in this case on April 1, 2019, charging Mayer with three child-pornography offenses. Mayer's initial appearance in this case occurred on April 5, 2019, at which time the 70-day period under the Speedy Trial Act began to run. *See* 18 U.S.C. § 3161(c)(1). Mayer's trial commenced on June 21, 2021. As such, 808 days passed between Mayer's initial appearance and the commencement of trial. However, portions of this 808-day period were excluded from Speedy Trial Act calculations, as summarized below.

It is undisputed that the 70-day speedy trial clock has been tolled multiple times because both Mayer and the United States filed numerous pretrial motions. *See* 18 U.S.C.

§ 3161(h)(1)(D), (H) (providing that time is excluded under the Speedy Trial Act for "delay resulting from any pretrial motion" as well as a maximum of 30 days from the date that such a motion is taken under advisement).

First, the speedy trial clock was tolled for 136 days, from April 9, 2019, through August 22, 2019.[1] During this period of time, pretrial discovery and dispositive motions, filed by both the United States and Mayer, were briefed, argued, and taken under advisement.

Second, the speedy trial clock was tolled for 16 days in August and September 2019 because the United States filed several motions—namely, a motion for a three-week continuance of the trial date and motions seeking, among other things, a *Frye/Lafler* hearing and a status conference.

Third, the speedy trial clock was tolled for 228 days, from October 4, 2019, through May 18, 2020. During this period of time, Mayer's motions to dismiss and suppress evidence were briefed, argued and taken under advisement. These dispositive motions were precipitated by the United States's filing of a first and second superseding indictment on September 25, 2019, and December 11, 2019, respectively.

Fourth, the speedy trial clock was tolled for 64 days, from March 18, 2021, through May 20, 2021. During this period of time, Mayer's motion to sever Counts 7 and 8 of the third superseding indictment was briefed and taken under advisement.

---

[1]     Under the Speedy Trial Act, "both the date on which the [pretrial] motion was filed and the date on which the [pretrial] motion was decided are excluded." *United States v. Mallett*, 751 F.3d 907, 913 n.7 (8th Cir. 2014) (internal quotation marks omitted).

Fifth, the speedy trial clock was tolled for 15 days, from June 1, 2021, through June 15, 2021, while the parties' motions in limine were briefed and taken under advisement. And the speedy trial clock was tolled again for one day when Mayer filed the pending motion to dismiss the indictment on June 20, 2021.

In total, the speedy trial clock has been tolled for 460 days (approximately fifteen months) because of pretrial motion practice, including more than a dozen pretrial motions filed by Mayer. Mayer's pending motion to dismiss the indictment does not specifically challenge the tolling of these periods of time, which are permitted under the Speedy Trial Act. *See id.*; *United States v. Williams*, 557 F.3d 943, 951–52 (8th Cir. 2009) (recognizing that the statutory exclusion applies to *any* pretrial motion, whether frivolous or meritorious).

In addition to the foregoing delays attributable to pretrial motion practice, the Court has tolled the speedy trial clock *sua sponte* several times because of the COVID-19 pandemic. On March 13, 2020, Chief Judge John R. Tunheim issued a General Order continuing all jury trials in the District of Minnesota through April 27, 2020. *See* General Order, *In Re: Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. Mar. 13, 2020). The March 13, 2020 General Order expressly excluded from Speedy Trial Act calculations the period of time "from March 13, 2020, to April 27, 2020." *Id.* In several subsequent orders, Chief Judge Tunheim extended the exclusion of time under the Speedy Trial Act. *See* General Order No. 9, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn.

Apr. 15, 2020) (extending exclusion of time to May 17, 2020); General Order No. 14, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. May 15, 2020) (extending exclusion of time to July 5, 2020); General Order No. 17, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. June 26, 2020) (extending exclusion of time until "the date that the criminal jury trial commences"). The District of Minnesota did not commence *any* criminal jury trials during the pandemic until September 2020, when *limited* criminal jury trials resumed:

> The Court will resume limited criminal jury and bench trials in September 2020. All jury trials must be conducted with appropriate safeguards, including social distancing and personal protective equipment. The Court has developed a protocol for jury trials to ensure the health and safety of all participants and that protocol must be followed.
>
> . . . In order to safely conduct criminal jury trials and to comply with the COVID-19 restrictions in place at local detention facilities, only a very limited number of jury trials may take place at the same time. Accordingly, criminal jury trials may be continued until the date that the criminal jury trial commences.

General Order No. 18, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. Aug. 27, 2020).

Consistent with and in reliance on the foregoing General Orders, this Court issued orders in this case on April 1, 2020; April 17, 2020; May 18, 2020: July 6, 2020; and August 31, 2020, collectively excluding the period of time between March 17, 2020, and October 30, 2020, from computation under the Speedy Trial Act. In its August 31, 2020

Order, this Court observed, among other things, that "because only a limited number of jury trials may take place at the same time, criminal jury trials may be continued until the date that the criminal jury trial commences," and that because of "the challenges created by the COVID-19 pandemic, the Court is unable to commence the jury trial in this case on or before October 30, 2020." The Court concluded:

> For the reasons addressed in General Order No. 18, the well-documented concerns about COVID-19, and because the jury trial in this case cannot commence on or before October 30, 2020, the Court specifically finds that the ends of justice served by ordering a continuance outweigh the best interests of the public and the Defendant's right to a speedy trial under 18 U.S.C. § 3161(h)(7)(A). In making this finding, the Court concludes that the failure to exclude time through October 30, 2020, would result in a miscarriage of justice under the unique circumstances the COVID-19 pandemic presents. 18 U.S.C. § 3161(h)(7)(B)(i).

Although the Court issued these orders *sua sponte*, neither the United States nor Mayer objected to any of these orders excluding time from Speedy Trial Act calculations.

On November 4, 2020, Chief Judge Tunheim ordered that "[a]ll criminal trials that have not already commenced as of the date of this order, are continued through December 31, 2020," in the District of Minnesota. *See* General Order No. 20, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. Nov. 4, 2020). In doing so, Chief Judge Tunheim observed that "Minnesota continues to experience high COVID-19 infection rates across the entire state,

with active COVID-19 cases at record highs."[2]  *Id.*  Thereafter, the District of Minnesota

did not commence *any* criminal jury trials until May 2021, when *limited* criminal jury

trials resumed:

> The Court will resume criminal jury and bench trials, starting on May 3, 2021.  All jury trials must be conducted with appropriate safeguards, including social distancing and personal protective equipment.  The Court has developed a protocol for jury trials to ensure the health and safety of all participants and that protocol must be followed.
>
> . . . To safely conduct criminal jury trials and to comply with the COVID-19 restrictions in place at local detention facilities, only a very limited number of jury trials may take place at the same time.  Accordingly, criminal jury trials may be continued until the date that the criminal jury trial commences.

General Order No. 28, *In Re: Updated Guidance to Court Operations Under the Exigent*

*Circumstances Created by COVID-19* (D. Minn. Apr. 29, 2021).

Consistent with and in reliance on Chief Judge Tunheim's General Orders, this

Court issued orders in this case on October 26, 2020; February 1, 2021; and March 12,

2021, collectively excluding the period of time between March 17, 2020, and June 21,

2021, from computation under the Speedy Trial Act.  In doing so, the Court again found

that the ends of justice served by continuing the trial in this case outweighed the interests

of the public and Mayer in a speedy trial, and that the failure to exclude time through

June 21, 2021, would result in a miscarriage of justice under the unique circumstances

---

[2]     Indeed, at least one criminal jury trial in this District required a two-week continuance in November 2020 after a juror tested positive for COVID-19 during the trial.  *See United States v. Hari*, No. 18-cr-0150(1), Dkt. 287 (D. Minn. Nov. 16, 2020).

that the COVID-19 pandemic presents. Although the Court issued these orders *sua sponte*, neither the United States nor Mayer objected to any of these orders excluding time from Speedy Trial Act calculations.

To the contrary, on November 4, 2020, the United States filed an *unopposed* motion to continue the trial in this case. At that time, Mayer's trial was scheduled to commence on March 9, 2021, and the United States sought to reschedule the trial to March 29, 2021, or April 5, 2021. The asserted bases for this request were the anticipated travel plans of counsel for both the United States *and* Mayer. The Court denied this unopposed request in a November 6, 2020 Order:

> Assuming without deciding that the United States has demonstrated good cause to delay the trial in this matter, the Court cannot accommodate counsel's request given the limitations in scheduling and safely conducting a jury trial during the ongoing COVID-19 pandemic. Moreover, there is nothing in the record to establish that Defendant consents to such a delay, nor has the United States provided the Court any basis to exclude time under the Speedy Trial Act without the Defendant's consent.

Subsequently, the Court nonetheless *sua sponte* continued the March 9, 2021 trial date based on extensions to the districtwide pandemic-related suspension of jury trials. On February 25, 2021, the Court issued an amended trial notice and final pretrial order, scheduling trial to commence on June 21, 2021. The District of Minnesota resumed criminal jury trials in May 2021, and the trial in this case commenced on June 21, 2021, as scheduled.

In total, the Court *sua sponte* excluded from speedy trial calculations 462 days, from March 17, 2020, through June 21, 2021, for ends-of-justice reasons arising from the COVID-19 pandemic.  Of those 462 days, 143 days were separately tolled while pretrial motions were pending, as summarized above.  As such, 319 days were excluded from speedy trial calculations based *solely* on the Court's pandemic-related *sua sponte* exclusions of time.  Mayer specifically disputes the propriety of only these particular exclusions of time.  If the Court's *sua sponte* exclusions of time were proper, only 30 days have elapsed on the 70-day speedy trial clock.  If the Court's *sua sponte* exclusions of time were improper, 349 days have elapsed on the 70-day speedy trial clock.

During the time period in which the Court's *sua sponte* exclusions of time applied, the commencement of jury trials in the District of Minnesota was suspended *districtwide* for all but 65 days (September 1, 2020, through November 4, 2020).  During the 65 days during which jury trials were *not* suspended in this District, three criminal jury trials occurred, including one trial involving Mayer.[3]  Additional criminal jury trials were scheduled during this time period but later cancelled, either because the case settled or the parties sought a continuance.[4]  Notably, pursuant to Chief Judge Tunheim's General

---

[3]     *See United States v. Hari*, No. 18-cr-0150(1) (D. Minn.) (trial commenced November 2, 2020, and concluded December 9, 2020); *United States v. Mayer*, No. 19-cr-0244 (D. Minn.) (trial commenced October 5, 2020, and concluded October 8, 2020); *United States v. Lewis*, No. 18-cr-0194 (D. Minn.) (trial commenced September 21, 2020, and concluded September 25, 2020).

[4]     *See, e.g.*, *United States v. Padilla*, No. 19-cr-0208(2) (D. Minn.) (trial scheduled to commence September 14, 2020, but defendant pleaded guilty on first day of trial); *United States v. Haynes*, No. 19-cr-0250(1), Dkts. 115, 145 (D. Minn.) (trial scheduled to

Orders and the District of Minnesota's COVID-19 protocols, only a limited number of jury trials could occur at any given time so as to protect the health of jurors, witnesses, parties, attorneys, the public, court staff and judges. Moreover, adequate time between trials was necessary to account for the unpredictable length of trials and jury deliberations, and to permit appropriate sanitization protocols to be followed.

Mayer's pending motion to dismiss the indictment in this case challenges the validity of the Court's *sua sponte* orders excluding time under the Speedy Trial Act because of the COVID-19 pandemic. According to Mayer, the "Court's general orders, finding months and months of time to be excludable under the [Speedy Trial] Act, without any data to suggest that criminal jury trials posed a threat to public safety, violate both the United States Constitution and the [Speedy Trial] Act." Mayer also contends that "it is not health and safety considerations that have required such a lengthy delay, but rather the congestion of the Court's calendar." As such, Mayer seeks dismissal of the third superseding indictment. The United States opposes Mayer's motion.

## ANALYSIS

Mayer argues that the third superseding indictment should be dismissed based on alleged violations of the Speedy Trial Act and his right to a speedy trial under the Sixth Amendment to the United States Constitution. Courts must evaluate "Sixth Amendment and Speedy Trial Act challenges for delay . . . independently of one another." *United*

---

commence September 16, 2020, but joint motion for continuance granted August 31, 2020).

*States v. Johnson*, 990 F.3d 661, 666 (8th Cir. 2021) (internal quotation marks omitted). As such, the Court addresses Mayer's statutory and constitutional arguments in turn.

## I.     Speedy Trial Act

Mayer first alleges violations of the Speedy Trial Act, which requires that criminal defendants be brought to trial within a specified period of time, with certain limited exceptions that warrant a delay.  18 U.S.C. § 3161(c)(1), (h).  If a defendant is not brought to trial within the time limit required under the Speedy Trial Act, after taking into consideration any of the statutory exceptions that permit a delay, the "indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  The defendant has the burden of proof to support such a motion to dismiss the indictment.  *Id.*

Under the Speedy Trial Act, the filing of pretrial motions tolls the speedy trial clock until the motion is decided.  *See* 18 U.S.C. § 3161(h)(1)(D), (H) (providing that time is excluded under the Speedy Trial Act for "delay resulting from any pretrial motion" as well as a maximum of 30 days from the date that such a motion is taken under advisement).  Mayer does not dispute that 460 days were properly excluded from speedy trial calculations based on the numerous pretrial motions filed by both the United States and Mayer in this case.[5]  Instead, Mayer challenges the Court's *sua sponte* exclusions of time (319 days in total) from speedy trial calculations based on the ends of justice in light of the COVID-19 pandemic.

---

[5]     Although Mayer objected to the August 30, 2019 trial continuance sought by the United States, that motion tolled the speedy trial clock for only six days, and such tolling was automatic under the Speedy Trial Act notwithstanding Mayer's opposition to the motion.  *See* 18 U.S.C. § 3161(h)(1)(D), (H); *Williams*, 557 F.3d at 952.

As relevant here, a district court may continue a trial, and exclude the period of the continuance from Speedy Trial Act calculations "on [its] own motion" based on "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Speedy Trial Act contains a *non-exclusive* list of factors that a district court may consider when conducting this ends-of-justice analysis. *Id.* at § 3161(h)(7)(B). These factors include whether the failure to continue the proceeding would make the proceeding "impossible" or otherwise "result in a miscarriage of justice," whether the case is complex or unusual, or whether the failure to grant a continuance would deny counsel for the defendant or the United States "the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* Although a court may consider other factors, the Speedy Trial Act prohibits a court from granting an ends-of-justice continuance based on the "general congestion of the court's calendar" or the prosecution's "lack of diligent preparation or failure to obtain available witnesses." *Id.* at § 3161(h)(7)(C). An ends-of-justice continuance does not require the defendant's consent. *United States v. Jones*, 795 F.3d 791, 798 (8th Cir. 2015).

An ends-of-justice continuance is *not* excludable from speedy trial calculations "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). These "findings must be made, *if only in the judge's mind*, before

granting the continuance," but these findings need not be expressly entered into the record at that time. *Zedner v. United States*, 547 U.S. 489, 506 (2006) (emphasis added). Rather, these "findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under [Section] 3162(a)(2)" of the Speedy Trial Act. *Id.* at 507.

Here, each of the Court's *sua sponte* orders excluding time included written findings as to the circumstances warranting the ends-of-justice exclusion. The Court's *sua sponte* orders excluding time also incorporated by reference the findings in Chief Judge Tunheim's series of General Orders. The Court expressly considered multiple factors, including but not limited to: (1) the national emergency declared by the President of the United States of America; (2) the peacetime emergency declared by the Governor of the state of Minnesota; (3) the pandemic-related restrictions implemented by local detention facilities that impact the ability of defendants to consult with legal counsel; (4) the health of jurors, witnesses, parties, attorneys, the public, court staff and judges; (5) the constitutional rights of criminal defendants and other parties; and (6) the public's interest in the effective and expeditious administration of justice.[6] Based on these considerations, the Court concluded it could not safely commence the jury trial in this case on or before June 21, 2021, and that the failure to exclude time through June 21, 2021, in this case would result in a miscarriage of justice.

---

[6] The Court did *not* consider the factors expressly prohibited from consideration under the Speedy Trial Act—namely, the congestion of the Court's calendar or any lack of diligent preparation by the United States. *See* 18 U.S.C. § 3161(h)(7)(C).

Mayer argues that the "general nature" of the foregoing findings are insufficient because they do not reference "facts or circumstances relevant to this unique case that have prevented this case from going to trial." But Mayer cites no legal authority requiring a district court to make *case-specific* findings to support an ends-of-justice exclusion of time under the Speedy Trial Act. And the Court's research has identified no such authority. Although the Speedy Trial Act requires express findings to support an ends-of-justice exclusion, the Speedy Trial Act includes no requirement for *case-specific* findings. *See generally* 18 U.S.C. § 3161(h)(7). And the Court's research has identified no case law imposing such a requirement. To the contrary, "other courts facing the challenges of conducting jury trials during the COVID-19 pandemic have found the [Speedy Trial] Act does not preclude courts from making district-wide findings continuing all jury trials." *United States v. Pair*, No. 3:20cr3, 2021 WL 279239, at *7–*8, ___ F. Supp. 3d ____ (E.D. Va. Jan. 27, 2021) (rejecting argument that an ends-of-justice continuance requires case-specific findings and collecting cases).

Notably, numerous courts have recognized that emergency conditions that result in widespread societal impact may warrant an ends-of-justice exclusion of time under the Speedy Trial Act. *See, e.g.*, *United States v. Scott*, 245 F. App'x 391, 394 (5th Cir. 2007) (affirming ends-of-justice exclusion of time following Hurricane Katrina); *Furlow v. United States*, 644 F.2d 764, 768 (9th Cir. 1981) (affirming ends-of-justice exclusion of time following volcanic eruption of Mount St. Helens); *United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (excluding time under Speedy Trial Act in the

interest of justice following September 11, 2001 terrorist attack). And federal courts throughout the country have recognized that the exigent circumstances created by the COVID-19 pandemic have warranted excluding time under the Speedy Trial Act based on the ends of justice. *See, e.g.*, *United States v. Olsen*, 995 F.3d 683, 693 (9th Cir. 2021) (recognizing that "surely a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health"); *Pair*, 2021 WL 279239, at *7 (observing that "[t]he Eastern District of Virginia does not stand alone in concluding that the ends of justice served by postponing trials during the COVID-19 public health emergency outweigh the best interest of the public and defendants in a speedy trial" and collecting cases).

The fact that the pandemic has had a similar impact on the scheduling of multiple criminal jury trials does not make the pandemic-related reasons for delay in Mayer's case any less relevant to the ends-of-justice analysis. To the contrary, a global pandemic of the nature and magnitude caused by COVID-19 is highly relevant to whether "the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial." *See* 18 U.S.C. § 3161(h)(7)(A). Indeed, the Speedy Trial Act expressly permits a court to consider factors that are not listed in the statute. *See id.* at § 3161(h)(7)(B) (listing factors a court must consider, "among others," when determining whether to order an ends-of-justice exclusion of time under the Speedy Trial Act). As such, Mayer has not demonstrated that the Court's prior written findings were

insufficiently specific to support the Court's ends-of-justice exclusions of time under the Speedy Trial Act in this case.

Even if case-specific findings were required, the Court may set forth those findings in greater detail now. *Pair*, 2021 WL 279239, at *5 (observing that ends-of-justice findings "can be entered into the record of the case as late as the court's ruling on the defendant's motion to dismiss" (citing *Zender*, 547 U.S. at 507)). Here, several circumstances unique to this case compounded the Court's inability to safely conduct a jury trial during the COVID-19 pandemic.

As recognized in the Court's orders excluding time from speedy trial calculations, the Governor of Minnesota, in response to the COVID-19 pandemic, imposed certain restrictions on Minnesota residents. These restrictions, variations of which have been imposed throughout the United States, prohibited, limited, or strongly discouraged travel and gatherings of people, in the interests of public health and safety. For certain periods of time, when COVID-19 cases were at their peak, Minnesota residents were subject to stay-at-home orders and prohibitions on gatherings of *any* size involving multiple households. Mayer's trial has involved multiple witnesses and potential witnesses from outside Minnesota, including law enforcement officers and the victim of Mayer's offenses. Moreover, the parties estimated that this trial could take nearly two weeks to complete, thus requiring witnesses and jurors to travel and gather for extended periods of time. As such, the nature of this case exacerbated the difficulty of scheduling a jury trial during the pandemic.

In addition, in its orders excluding time from speedy trial calculations, the Court recognized that local detention facilities had implemented pandemic-related restrictions that impacted the ability of pretrial detainees to consult with legal counsel. Mayer has been in custody throughout the pandemic. Thus, when continuing the trial in this case, the Court understood that failing to do so could hinder Mayer's ability to meet with his counsel and prepare for trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv) (providing that, when granting an ends-of-justice exclusion of time under the Speedy Trial Act, a district court may consider whether failing to continue the trial would "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence"). Indeed, the numerous restrictions on travel, gatherings, and access to detention facilities undoubtedly hindered the ability of counsel for both the United States and Mayer to prepare effectively for trial.

Mayer argues that the Court could have held the trial in this case in October 2020 when, for a two-month period, the District of Minnesota resumed jury trials on a limited basis. In doing so, Mayer observes that this Court commenced a week-long trial on October 5, 2020, in another case in which Mayer was the defendant. *See United States v. Mayer*, No. 19-cr-0244 (D. Minn.). Mayer overlooks the District of Minnesota's General Orders and COVID-19 protocols, which permitted (and continue to permit) only one jury trial in each courthouse at any given time. Mayer also does not explain how he, his counsel, and counsel for the United States reasonably could have prepared for and attended two trials simultaneously or in rapid succession. Indeed, Mayer repeatedly

sought to bifurcate his trial in this case—requests that, if granted, would have required summoning hundreds of potential jurors so as to empanel at least three separate juries.

Mayer contends that these logistical impediments reflect general congestion in the Court's calendar, which is an impermissible basis for excluding time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(C) (providing an ends-of-justice continuance cannot be granted based on "general congestion of the court's calendar"). Undisputedly, the pandemic has impacted the Court's calendar. But congestion of the Court's calendar was *not* a basis for the Court's ends-of-justice findings. Rather, the Court considered, among the numerous factors addressed herein, whether it was possible to conduct a jury trial in compliance with public health and safety recommendations and requirements, and whether holding such a trial would be fair to Mayer. *See Pair*, 2021 WL 279239, at *6 (relying on similar considerations).

For these same reasons, the District of Minnesota did not resume jury trials until September 2020, after developing procedures and best practices to safely select a jury and conduct a jury trial during a contagious and deadly pandemic. These considerations were relevant not only to the health and safety of all participants in the trial, but also to whether jurors could render a fair decision while preoccupied by serious health and safety concerns. *See id*. (observing that a defendant's right to a fair trial might be impaired if jurors are unfocused, distracted, impatient, or unavailable for jury service as a result of the pandemic). For these reasons, the District of Minnesota suspended jury trials again from November 2020 until May 2021, when "Minnesota continue[d] to be an area of risk

for further COVID-19 spread and there [were] concerns about the potential increased transmissibility of emerging strains of the COVID-19 virus." General Order No. 28, *In Re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Minn. Apr. 29, 2021). Indeed, despite this District's safety protocols, one of the jury trials in this District required a two-week continuance because a juror tested positive for COVID-19 in the middle of trial. *See United States v. Hari*, No. 18-cr-0150(1), Dkt. 287 (D. Minn. Nov. 16, 2020).

In summary, Mayer bears the burden to demonstrate that dismissal is warranted based on an alleged violation of the Speedy Trial Act. Although he contends that time should not have been excluded under the Speedy Trial Act because of the COVID-19 pandemic, he has not demonstrated any factual or legal error in the Court's findings or conclusions. Accordingly, Mayer has not satisfied his burden to demonstrate that his rights under the Speedy Trial Act have been violated or that dismissal of the indictment is warranted on this basis.

## II.     Sixth Amendment

Mayer also alleges violations of his Sixth Amendment right to a speedy trial.[7] Alleged violations of the Sixth Amendment right to a speedy trial must be evaluated independently from alleged violations of the Speedy Trial Act. *Johnson*, 990 F.3d at 666.

"The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *Id.* at 670

---

[7] Inexplicably, the United States fails to address the Sixth Amendment in its response to Mayer's motion to dismiss the indictment.

(internal quotation marks and brackets omitted). "Assessment of whether a defendant's Sixth Amendment right to a speedy trial has been violated includes consideration of the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (internal quotation marks omitted) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The Court addresses each *Barker* factor in turn.

## A. Length of the Delay

When considering the length of the delay, courts conduct a two-step threshold analysis: "(1) whether the length of delay was presumptively prejudicial such that it triggers the *Barker* analysis, and, if triggered, (2) the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *United States v. Rodriguez-Valencia*, 753 F.3d 801, 805 (8th Cir. 2014) (internal quotation marks omitted). Here, the delay of more than two years is presumptively prejudicial. *See Johnson*, 990 F.3d at 670 (concluding that a "nearly 14-month delay was presumptively prejudicial"). Therefore, the Court must assess the remaining three *Barker* factors— namely, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant. This assessment "is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 670–71 (quoting *Barker*, 407 U.S. at 530–31).

## B. Reason for the Delay

"The second *Barker* factor—reason for the delay—requires determining whether the government or the criminal defendant is more to blame." *Rodriguez-Valencia*, 753 F.3d at 806 (internal quotation marks omitted). If "the reason for the delay was primarily

attributable to the court's docket congestion," such a reason "weighs in favor of a Sixth Amendment violation, but only slightly." *Johnson*, 990 F.3d at 671. As addressed above, the delays in this case were attributable primarily to the filing of pretrial motions and the delays occasioned by the COVID-19 pandemic. Both the United States and Mayer filed numerous pretrial motions and, therefore, these delays are equally attributable to both parties. And, of course, neither party is responsible for the delays caused by the COVID-19 pandemic. Moreover, these delays were not primarily attributable to the Court's docket congestion. Accordingly, the second *Barker* factor does not weigh in favor of a Sixth Amendment violation.

### C.    Defendant's Assertion of the Speedy Trial Right

The third *Barker* factor is whether and how the defendant asserted his right to a speedy trial. *Id.* This inquiry permits a district court to "weigh the frequency and force of the objections" a defendant made in response to trial continuances. *Id.* (quoting *Barker*, 407 U.S. at 529). Here, Mayer did not object to the Court's multiple pandemic-related trial continuances. In fact, Mayer first asserted his right to a speedy trial when he filed the pending motion to dismiss the indictment on June 20, 2021—the day before the trial commenced. Mayer argues that he "was given no opportunity to object to the Court's numerous *sua sponte* continuances" during the pandemic. This argument lacks merit. Nothing prevented Mayer from filing an objection or a motion prior to the eve of trial. Indeed, Mayer filed numerous motions and objections throughout the history of this case, which he has zealously litigated. Not only did Mayer not object to the Court's

pandemic-related continuances, he also did not oppose the United States's motion for a trial continuance in November 2020. In that motion, the United States represented that both the United States *and* defense counsel desired a trial continuance to accommodate their schedules. Notably, the Court denied that motion in part because the parties had not demonstrated whether Mayer personally consented to doing so. On this record, the third *Barker* factor weighs against finding a Sixth Amendment violation.

### D. Prejudice

The fourth *Barker* factor assesses the prejudice to the defendant caused by the delay in light of three particular interests: preventing oppressive pretrial incarceration, minimizing the defendant's anxiety and concern, and limiting the possibility that the defendant's defense will be impaired. *Id.* (citing *Barker*, 407 U.S. at 532).

Mayer undisputedly has been in pretrial detention since this case commenced in April 2019. Notably, nearly half of Mayer's pretrial detention in this case coincided with his pretrial detention in a separate federal criminal case. *See United States v. Mayer*, No. 19-cr-0244 (D. Minn.) (involving pretrial detention from September 2019 through October 2020). And other trial delays occurred as a result of pretrial motions filed by both the United States and Mayer. As such, Mayer's period of detention is not solely attributable to the Court's *sua sponte* trial continuances in this case. Mayer nonetheless contends that his pretrial incarceration involved "very restrictive conditions," presumably alluding to the pandemic-related restrictions imposed by the detention facility in which he has been detained. The Court is mindful that conditions in detention facilities have been

unusually restrictive during the pandemic. But the nature of these restrictive conditions is not attributable to the trial delays in this case; rather, such conditions are attributable to the COVID-19 pandemic. *See Johnson*, 990 F.3d at 671 (rejecting allegations of prejudice that "are unrelated to the delay and more attributable to" other causes). Indeed, the pandemic-related health and safety concerns that precipitated the trial delays in this case also motivated detention facilities to impose greater restrictions for the safety of inmates. The fact that such delays occurred and undoubtedly contributed to Mayer's anxiety is insufficient to establish a Sixth Amendment violation because "avoiding anxiety, without concurrent prejudice to the defendant's ability to mount a defense, is likely the weakest interest served by the Sixth Amendment." *Id.* (internal quotation marks and brackets omitted).

Most significantly, Mayer has not identified any actual prejudice that he suffered as a result of the trial delays in this case. Mayer contends that the trial delays "permitted the Government to seek new charges in the three superseding indictments in the case while [Mayer] waited in jail, and new evidence on which to base even old charges." According to Mayer, this "result[ed] in many hours of wasted time preparing to defend the old charges, and the need for additional time and resources to investigate the new or modified charges."[8] These vague contentions do not, however, demonstrate the type or degree of prejudice necessary to establish a Sixth Amendment violation.

---

[8] Notably, Mayer's assertion that he needed "additional time and resources to investigate the new or modified charges" is inconsistent with his assertion that his trial should have been sooner and that he has been prejudiced by the trial delays in this case.

It is true that, when the government has negligently delayed trial, "prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *United States v. Erenas-Luna*, 560 F.3d 772, 779 (8th Cir. 2009) (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). But the trial delays in this case are not attributable to negligence on the part of the United States and, therefore, a heavy presumption of prejudice based solely on vague allegations is unwarranted. *See id.* at 780 (holding that courts may "vary the weight assigned to the presumption [of prejudice] according to the government's negligence and the length of delay"). Actual prejudice ordinarily is not established if the defendant "fail[s] to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Id.* at 779 (quoting *Doggett*, 505 U.S. at 655).

Mayer has not alleged, let alone demonstrated, that the passage of time has impaired his ability to raise a particular defense or present exculpatory evidence. Mayer has not identified any evidence that has been lost or any witnesses who have become unavailable or unable to remember material facts. Instead, he argues that the passage of time has permitted the United States to pursue additional charges against him and discover new evidence against him. But these developments do not establish prejudice absent an affirmative showing that Mayer's ability to mount a defense has been weakened by the passage of time. Indeed, the passage of time has permitted Mayer an equivalent opportunity to develop a defense, gather and inspect evidence, and raise legal

challenges in the numerous pretrial motions he has filed.  Moreover, as addressed above, the Court delayed the trial in this case in part to ensure that Mayer could effectively prepare for trial and receive a fair trial in light of numerous pandemic-related risks and restrictions.  As such, Mayer has not demonstrated that the trial delays in this case prejudiced his defense or his ability to prepare effectively for trial.  To the contrary, the trial delays likely had the opposite effect.

In summary, although the length of the delay in this case is presumptively prejudicial and Mayer has been in pretrial detention since this case commenced, none of the other relevant *Barker* factors demonstrates that a Sixth Amendment violation has occurred.  Most significantly, the United States does not bear responsibility for the trial delays, Mayer did not object to the delays or assert his speedy trial rights until the eve of trial and Mayer has not demonstrated any actual prejudice caused by the delay.  Accordingly, Mayer has not demonstrated that his Sixth Amendment right to a speedy trial has been violated or that dismissal of the indictment is warranted on this basis.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Travis Kyle Mayer's motion to dismiss the indictment, (Dkt. 194), is **DENIED**.


Dated:  June 30, 2021                                  s/Wilhelmina M. Wright
                                                                    Wilhelmina M. Wright
                                                                    United States District Judge