UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 19-cr-96 (WMW/HB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

TRAVIS KYLE MAYER,

Defendant.

**THE GOVERNMENT'S SENTENCING POSITION**

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Alexander D. Chiquoine and Joseph H. Thompson, Assistant United States Attorneys, hereby submits its position regarding sentencing. The Government respectfully requests that the Court impose a sentence of life plus ten years of imprisonment.

## INTRODUCTION

The defendant, Travis Kyle Mayer, is a violent, repeat sex predator whose primary target is children. Mayer inflicted untold psychological and emotional trauma on his victims, minors ranging in age from infants to teenagers. Despite this, Mayer has no remorse. He will not reform—he has no desire to do so. Mayer is a habitual liar who will do and say anything to commit his crimes and avoid accountability. His lengthy criminal history shows he is incapable of living a law-abiding life in civil society. Mayer will reoffend if he is not incarnated for life.

The courage of a fifteen-year-old girl, Minor A, in reporting Mayer in 2018 (and later testifying against him) allowed law enforcement to put an end to his active sexual victimization of children. Now, the Court must ensure Mayer cannot resume his reign of terror, protect society (especially children), and justly punish Mayer for his egregious criminal conduct. To do this, a life sentence is necessary.

The Government does not request this sentence for Mayer lightly. A life sentence, however, is appropriate and required. Federal statute mandates such a sentence. The Guidelines undoubtedly recommend it as the appropriate sentence. And the traditional considerations of sentencing weigh heavily in favor of Mayer spending the rest of his life in prison. The Court should sentence Mayer to life plus ten years. In doing so, it should make clear that regardless of the application the mandatory life statute, this would be the Court's sentence.

## BACKGROUND

### I. The Record Establishing the Facts for Sentencing.

The Court may rely on the trial record and any unobjected to facts contained in the Presentence Investigation Report (PSR) [Dkt. 230] to sentence Mayer. *See United States v. Campbell*, 986 F.3d 782, 798 (8th Cir. 2021); *United States v. Theimer*, 557 F.3d 576, 578 (8th Cir. 2009). Where Mayer has lodged a specific objection to a relevant factual assertion in the PSR that was not established in the trial record—or the Government asks the Court to consider a fact not educed at trial—the Government must prove that fact by a preponderance of the evidence at sentencing. *Campbell*, 986 F.3d at 798. In such instances, a full evidentiary hearing

is not required, and the Rule of Evidence do not apply. *See id.*; Fed. R. Evid. 1101(d)(3).

As discussed below, Mayer lodges numerous objections to factual assertions in the PSR. (*See* Def.'s Objs. to Prelim. PSR [Dkt. 228]). Many of his objections ignore the trial record entirely. In reciting the background and facts herein, the Government relies on the trial record (*see* Dkt. 206 (Trial Exhibit List); Dkts. 237–242 (Trial Transcripts)) and unobjected to facts in the PSR, as should the Court. Where Mayer has filed a specific objection to a factual assertion in the PSR not addressed by the trial record, or the Government raises a fact not addressed at trial, the Government cites supporting evidence that it will offer at sentencing.

## II. The Defendant's Criminal History and Relevant Historical Conduct.

Mayer is 33 years old. Since becoming an adult[1]—and despite having spent a significant portion of his adult life in prison—Mayer has amassed <u>seven</u> felony and <u>fourteen</u> gross misdemeanor and misdemeanor convictions. (PSR at ¶¶ 97–109). His priors include attempted third degree criminal sexual conduct, aggravated assault with a firearm, numerous burglaries and thefts, multiple assaults and disorderly conducts involving violence, and property damage. (*Id.*).

[1] Mayer's juvenile record is not contained in the federal PSR. (PSR at ¶¶ 95–96). However, his juvenile record was obtained and included in his 2012 Minnesota state PSR following his conviction for attempted third degree criminal sexual conduct. (Gov't Sent. Ex. A (Mayer's 2012 Minnesota PSR) at 0248). It shows nine juvenile charges, including at least two delinquency adjudications, for crimes including battery, grand theft with a firearm, and property damage. (*Id.*).

### A. The Defendant's conviction for attempted third degree criminal sexual conduct.

In April 2012, Mayer attempted to rape a 13-year-old girl with developmental delays. (PSR at ¶ 107; Gov't Sent. Ex. B (2012 Le Sueur County Court Verdict and Findings of Fact) at 2281, 2289–90). Mayer was 23 years old, but told his victim, G.S., and her mother that he was only 17. (PSR at ¶ 107; Gov't Ex. B at 2281–82). One day, Mayer came to G.S.'s house and went with her to her bedroom. (Gov't Sent. Ex. B at 2283). He locked the door and began to force himself on G.S., tickling her, trying to kiss her, pulling up her shirt and bra, and pulling down her pants. (*Id.* at 2284). G.S. testified that she resisted, telling Mayer that she "did not like him like that." (*Id.*).

Mayer did not stop and instead escalated, touching G.S.'s "private parts" and her breasts. (*Id.*). Thankfully, G.S.'s mother arrived to check on her and discovered the bedroom door was locked. (*Id.*). She kicked open the door and discovered Mayer standing over her daughter, zipping up his pants, as her daughter lay on the bed with her bra around her neck and her pants pulled down. (*Id.* at 2284–85). Mayer fled, after which G.S.'s mother noticed bruises on G.S., including some that looked like bite marks. (*Id.* at 2285–86). G.S. confirmed that Mayer bit her. (*Id.* at 2286).

Mayer was charged with one count each of attempted first and third degree criminal sexual conduct and elected to have a bench trial. (*Id.* at 2281, 2290). At trial, Mayer denied that anything sexual happened between him and G.S., accusing G.S. and her mother of fabricating the entire story. (*Id.* at 2282–87). The court found Mayer's testimony entirely uncredible. (*Id.* at 2287). But, the court concluded that

the State failed to prove beyond a reasonable doubt that Mayer used force or coercion and thus acquitted Mayer on the first-degree charge while convicting him on the third degree charge. (*Id.* at 2288–90). Mayer was ultimately sentenced to 71 months in prison and served almost that entire sentence due to his numerous infractions while on parole. (PSR at ¶ 107).

Mayer's conviction for attempted third degree criminal sexual conduct required him to register as a sex offender. (Trial Ex. 1).

**B. The Defendant's conduct while previously incarcerated and on supervision.**

Mayer has proven incapable of obeying the law even while incarcerated. In 2019, he was convicted of multiple offenses while in custody at the Freeborn County Jail after he smeared his feces around his cell and broke a fire alarm sprinkler. (PSR at ¶ 109). While incarcerated in 2013 for attempted third degree criminal sexual conduct, and despite a no contact order, Mayer tried to contact a minor through a third party. (Gov't Sent. Ex. C (Mayer's 2017 MNDOC End of Confinement Review) at 0215). During that same period, prison staff twice discovered Mayer in possession of prohibited items related to minors, including a list containing the names and ages of 85 minor females, 175 cut out pictures of small children, 33 pages of stories involving sexual assaults on young children, and a sexually explicit letter addressed to a minor. (Gov't Sent. Ex. C at 0212, 0215).

Mayer's record on supervision is poor. His Minnesota parole was revoked on at least three occasions, usually because he committed new criminal offenses. (*See* PSR at ¶¶ 103, 107; Gov't Sent. Ex. C at 0212, 0215). Mayer's parole in 2016–2017

was revoked numerous times. In 2017, Mayer was revoked after law enforcement received verified reports that he was downloading child pornography and was subsequently discovered in possession of a contraband cellphone, children's underwear, and a child's diaper. Mayer has also repeatedly failed to participate in or complete chemical dependency and sex offender treatment. (Gov't Sent. Ex. C at 0218; PSR at ¶¶ 135, 138).

Shortly before his release from state custody in 2018, the Minnesota Department of Corrections End of Confinement Review Committee (MNDOC ECRC) classified Mayer as a level 3 sex offender, the highest classification possible, indicating Mayer was highly likely to reoffend.[2] (*Id.* at 0211, 0213). Using the Minnesota Sex Offender Screening Tool (MnSOST), the ECRC determined Mayer's score was higher than 97.6% of other screened sex offenders and he had a 33.25% likelihood of sexual recidivism. (*Id.* at 0215). Unfortunately, Mayer would quickly prove this assessment correct.

## III. The Defendant's Instant Criminal Conduct and Trial.

Between 2017 and 2019, Mayer repeatedly sexually exploit children online. If not for the courage of one victim, Minor A—who, despite Mayer's threats, reported him to the authorities—Mayer would undoubtedly have continued his crime spree. On June 29, 2021, a federal jury found Mayer guilty of eight felony offenses: two

[2] Details regarding the MN DOC's predatory offender classification process and the meaning of assigned levels can be found here: https://por.state.mn.us/PredatorFAQ.aspx

counts of production of child pornography, one count of distribution of child pornography, one count of receipt of child pornography, one count of possession of child pornography, one count of coercion and enticement of a minor, one count of committing a felony offense involving a minor while required to register as a sex offender, and one count of obstruction.

### A.   Mayer used a cell phone to receive and possess child pornography in 2017.

Mayer was released on parole in July 2017. At the time he was 28 years old. He immediately acquired a cell phone ("Mayer's 2017 Phone") in violation of the terms of his parole. Mayer used the phone to download thousands of images of child pornography and child erotica. He regularly used the device to search for child pornography. Among other things, Mayer searched for terms like "preteen sex movies," "extremely tiny teens raped," and "Daddy please stop."

Mayer also used the 2017 Phone to access a Russian file sharing website (imgsrc.ru) popular with pedophiles as a means to acquire and share child pornography. Mayer visited this site almost daily in August and September 2017.

In just two months, Mayer downloaded thousands of images of child pornography and child erotica. Dozens depict minor victims identified through previous law enforcement investigations and cataloged by the National Center for Missing and Exploited Children (NCMEC). Mayer carefully organized his child pornography collection into folders on his 2017 Phone with names like "kiddy porn heaven," "new kiddy porn," "kid smut," and "touch yourself for Daddy."

In August 2017, law enforcement received tips from Google that Mayer's Gmail account and the IP address for the motel where Mayer was staying were involved with suspected child pornography. Mayer was prohibited from having an internet capable device, so the MN DOC and Albert Lea police performed a parole check. When officers approached Mayer and asked him if he had a cell phone, Mayer produced the 2017 Phone from his pocket but then avoided officers' attempts to take the device from him while manipulating the device.

During the search of Mayer's motel room, officers found children's underwear and an unused child's diaper. They also found pieces of paper with Mayer's Gmail account and an account to imgsrc.ru (misspelled "ImagesRU") written on them. (Trial Ex. 4). Given the numerous parole violations discovered during this check, Mayer's parole was revoked and he was returned to prison.

**B. Mayer's crimes in 2018.**

Mayer was released from state custody in late March 2018. He was 29 years old. Mayer again acquired a cell phone ("Mayer's 2018 Phone") and began exploiting minors online. He used aliases (such as "Tyler Cole" and "Timothy Schulz") and posed as a teenager, a single father who had a young daughter. His online persona was entirely untrue.

In particular, Mayer targeted Minor A, a 15-year-old girl living in Oregon.[3] Mayer knew how old Minor A was because she told him almost immediately upon connecting online in early April 2018. In his subsequent text messages to her, Mayer

[3] Minor A was 14 years old when Mayer first met her but turned 15 soon after.

repeatedly "did the math"—to the month—as to when she would turn 18. Mayer also regularly asked Minor A when he could come "steal her" from her parents so they could be together.

From April into August 2018, Mayer groomed and manipulated Minor A. He demanded they be in near constant contact via text and chat. Between June 8 and August 8, 2018, Mayer and Minor A exchanged more than 23,000 text messages, in addition to daily calls and video chats.

Mayer also subjected Minor A to emotional/psychological abuse and manipulation. At times he was caring and played on Minor A's desire to love and be loved. Mayer told Minor A he loved her thousands of times and repeatedly said that he wanted to have a family with her. He pretended to have a daughter ("Harley") for whom he was caring and who wanted Minor A as a mother. But Mayer was also terribly cruel. When Minor A did not do as he demanded, Mayer threatened to break up with her and said he would harm himself or others. On dozens of occasions, when Minor A did not do as Mayer demanded, he emotionally battered her, calling her a "stupid heartless bitch," "lying cunt," and "slut," amongst many, many other insults.

Mayer's efforts were all aimed at one goal—to use Minor A to produce child pornography. Unfortunately, he was successful. Between April and August 2018, Mayer solicited Minor A to produce child pornography for him on a nearly daily basis, which she did. He saved some of the images and videos she sent him in a folder on his 2018 that he titled "[Minor A] forever." Mayer also repeatedly sent Minor A images of his penis and videos of himself masturbating.

On the morning of August 8, 2018, after days of Mayer berating Minor A, their "relationship" disintegrated because she would no longer accommodate his demands. Mayer panicked and threatened to contact Minor A's friends and relatives to "tell them about her." He sent Minor A screenshots of him reaching out to various people saying he needed to talk with them about Minor A. When this did not have the desired effect, Mayer sent Minor A the naked images of herself he saved, proving that he could embarrass and otherwise "out" her online. This did not work either, so Mayer switched gears, claiming that if he got in trouble, so would Minor A. He sent Minor A screenshots that suggested teenagers could get in legal trouble for "sexting" under Oregon law. Mayer went so far as to call Minor A's mother and threaten, falsely, that if they went to the police, Minor A would also get in trouble.

Despite Mayer's intimidation, Minor A and her family went to the police in Oregon and reported Mayer's conduct. Minor A provided law enforcement with her own cell phone, which contained thousands of messages between her and Mayer, including those where he sent her sexually explicit images of herself. This allowed to law enforcement to identify "Tyler Cole" as Mayer.

In late September 2018, Albert Lea police arrested Mayer and seized his 2018 Phone. FBI forensic examiners ultimately "cracked" and searched this device. They discovered evidence of the conduct described above and much more, including hundreds of images of child pornography and erotica that depicted victims other than Minor A. Mayer's web history and search items also showed his insatiable sexual

appetite for the abuse of young children. Below are just some of the online searches Mayer performed:

- Asian boys naked
- Ways men can molest children
- Kids and sex
- Tween sex
- Child abuse photos
- Child abuser apps
- Child abusing games

Mayer also visited the imgsrc.ru website nearly every day, usually many times per day, and viewed pages with titles suggesting they contained graphic child pornography. Mayer saved and organized the child pornography he received—whether from the minors he directly exploited, or those he downloaded from file sharing sites—into folders on his 2018 Phone.

Mayer's 2018 Phone was also replete with evidence that after Minor A left him, but before he was arrested, he targeted and exploited other minors online.[4] In less than two months, Mayer sexually exploited at least four other minors in ways nearly identical to those he employed with Minor A.

### C. Mayer's obstruction of justice.

Mayer was federally charged in April 2019 and detained at Sherburne County Jail. Soon after his arrival, he began plotting his "defense" in monitored jail calls and letters to his mother ("Cindy"), brother ("Steven"), and friend ("Melissa"). As the

[4] Before he did so, he changed his phone number and also altered the name on his online profiles to "Timothy Schulz."

Court heard at trial, Mayer brazenly instructed his mother to give false testimony to a federal grand jury and at trial.

**D.    Trial and the Defendant's Lies and Admissions.**

Over the course of several trial days, the Government called fifteen witnesses and admitted over 150 exhibits establishing Mayer's above-described criminal conduct.  Mayer elected to testify in his own defense.  In that testimony, he made some remarkable admissions while also telling still more lies.

On direct, when asked about his 2012 attempted third degree criminal sexual conduct conviction, Mayer acknowledged the conviction, but described it as resulting from an "incident" where "they were saying" that Mayer and G.S. "almost had intercourse."  (Trial Tr. Vol. IV at 725:14, 726:14-15 [Dkt. 241]).  On cross-examination, Mayer was forced to admit that this "incident" was his attempt to have sex with a vulnerable, immature 13-year-old girl after he mislead her about his age. (Trial Tr. Vol. V at 832:20 – 836:16 [Dkt. 242]).  Mayer also admitted he lied when he testified in 2012.  Lied when he claimed G.S. and her mother made up their testimony against him.  (*Id.* at 839:7 – 840:17).  Lied again at his sentencing.  (*Id.* at 841:11 – 842:6).  Nonetheless, before he finished testifying in the instant matter, Mayer returned to casting aspersions on G.S. and her mother.  (Trial Tr. Vol. V at 916:19 – 917:6).

Mayer claimed that while he possessed and used his 2017 Phone at times, he acquired it from and kept it in the room of another sex offender—implying this other sex offender was the one who downloaded thousands of images of child pornography

onto that device.  (Trial Tr. Vol IV at 734:6 – 741:7).  But on cross-examination, Mayer admitted he regularly used the phone to communicate with his family, even storing photos of his family in the same folder space as those that contained copious child pornography and bore names like "kiddy porn heaven."  (Trial Tr. Vol. V at 849:23 – 853:9).  The browsing history on his 2017 Phone showed Mayer regularly accessing his Facebook account, searching the web for his criminal record and mug shots, and looking up his status as a sex offender.  (Trial Ex. 34).  The browsing history often showed that within minutes or even second of this activity, the user began looking at child pornography websites.   (*See, e.g., id.* at 034-0026–28, 034-0084–92).  Furthermore, the account used to access the Russian child pornography sharing site bore a username (kyle696969) consisting of Mayer's middle name.  (Trial Ex. 14).  Mayer himself admitted visiting this site, although he claimed it was for "other" pornography and pictures.  (Trial Tr. Vol. V at 825:21 – 827:16, 847:22 – 848:22).

Turning to his criminality in 2018, Mayer admitted to having a relationship with Minor A, despite knowing she was only 15 years old, and exchanging sexually explicit images and videos with her.  (Trial Tr. Vol. IV at 757:16 – 758:9, 761:1 – 762:12).  As Mayer put it on direct, "I was interested in seeing some things, so we would make our request[s]."  (*Id.* at 761:8–9).  On cross-examination, he confirmed that he asked Minor A to show him her naked body, including her genitals, and to see her masturbate, which she did, and he saved some of the images she sent.  (Trial Tr. Vol. V at 865:24 – 867:6, 921:5–24).  After Minor A ended the relationship, which Mayer falsely claimed was a "mutual" decision, he admitted threatening her—

threatening to get her arrested and to distribute the explicit images she previously sent him. (*Id.* at 872:19 – 878:12).

However, Mayer also claimed Minor A knew his real name, that he was 30 years old, and his "criminal background," but loved him nonetheless. (Trial Tr. Vol. IV at 774:24 – 776:10; Trial Tr. Vol. V at 857:14 – 860:25, 918:12–15). These assertions were rubbish. Minor A testified that Mayer never told her his real name, represented that he was 18 or 19 years old, and never made any reference to the fact he a convicted sex offender who had to register as such. Her testimony was supported by the tens of thousands of texts and chats between her and Mayer. Nowhere in those communications did Mayer ever mention his real name, his age, or his status as a sex offender. As Minor A testified, had Mayer told her the truth about himself, she never would have communicated with him.

Mayer confessed that after Minor A broke up with him, he went on to victimize at least four other teenage girls (who he claimed to believe were 15 or 16 years old, but some of whom were younger). (Trial Tr. Vol. V at 829:11 – 830:16, 887:19 – 909:24). When asked about his sexual interests in children, Mayer admitted he had "some interest" in "teenage girls," but clarified that meant 15 and 16 years old, with 13 and 14 years old being "a little too young." (*Id.* at 854:25 – 855:19).

**E. The Defendant's conduct while in federal custody.**

Since his arrest on federal charges in April 2019, Mayer has continued to engage in unlawful conduct. At the Sherburne County Jail, Mayer has incurred dozens of infractions for assault, harassment, threatening bodily harm, causing

unsanitary conditions (by hurling his feces and urine at guards, or smearing his excrement around his cell), inciting and participating in mutinous acts or disturbances, and property damage. (PSR at ¶ 4). Mayer has also repeatedly threatened law enforcement and the prosecution team.

**F. The Defendant's other background and characteristics.**

Besides his extensive criminal history and callousness in committing the instant offenses, Mayer's background and characteristics are remarkable only in that they provide few, if any, mitigating circumstances.

Mayer relates that his parents treated him well, he suffered no abuse as a child, and his family was financially stable. (PSR at ¶ 126). He has no physical ailments. (*Id.* at ¶ 132). His parents had no problems with drugs or alcohol, but Mayer began drinking at age 9 and using methamphetamine at age 13—a development he blames on being prescribed stimulants to curb his unruly behavior in school. (*Id.* at ¶¶ 127, 137). Mayer has failed to complete, or been kicked out of, substance abuse treatment on multiple occasions. (*Id.* at ¶ 138).

Mayer claims he was previously diagnosed with a variety of mental health conditions but refused to sign the waivers necessary to verify these claims. (*Id.* at ¶ 134). He similarly asserts he is currently suffering from anxiety, but again refused to provide any corroborating documentation. (*Id.* at ¶ 135). He is only interested in mental health treatment if his privacy is "protected." (*Id.* at ¶ 136). Notably, Mayer is clear that he has no interest whatsoever in sex offender treatment. (*Id.* at ¶ 135).

Mayer has no significant other or children, but claims he helped raise his ex-girlfriend's daughter (who is not his biological child) "off and on" for the last several years. (PSR at ¶ 129). However, this difficult to believe considering Mayer has been incarcerated or subject to sex offender limitations, including no contact with children, for that child's entire life.

## ARGUMENT

### IV. Application of Statutory Enhancements.

Two statutory enhancements potentially impact the sentence Mayer should receive. The first is the mandatory life sentence called for under 18 U.S.C. § 3559(e). The second is the mandatory minimum sentences set forth in 18 U.S.C. §§ 2251(e), 2252(b)(1), and 2252(b)(2). Mayer objects and argues that no statutory enhancements apply. (Def.'s Objs. to the PSR at 6 [Dkt. 228]).

As the PSR notes, § 3559(e)'s mandatory life sentence applies to Mayer's convictions on Counts 1, 2, and 5. (PSR at ¶ 150). However, as discussed below, the law governing whether Mayer's prior sex conviction qualifies as the required predicate offense is unsettled. Should the Court find that 3559(e) applies, the Government respectfully requests that it also hold that even if 3559(e) were inapplicable, the Court would still sentence Mayer to life pursuant to the Guidelines and 18 U.S.C. § 3553(a).[5] Alternatively, the Court could find that 3559(e) does not

[5] The Court may impose a life sentence regardless of the application of 18 U.S.C. § 3559(e) because Mayer's conviction for coercion and enticement of a minor (Count 5) allows for a life sentence. *See* 18 U.S.C. § 2422(b).

apply and simply sentence Mayer to life based on the considerations of the Guidelines and 3553(a).

As to the second statutory enhancement issue, Mayer's prior sex offense conviction qualifies as a predicate. This is the recommended finding in the PSR and is supported by statute and caselaw. Thus, the statutory mandatory minimums apply.

**A. Mandatory life and 18 U.S.C. § 3559(e).**

Mayer stands convicted, in relevant part, of two counts of production of child pornography (18 U.S.C. § 2251(a)) and one count of coercion and enticement of a minor (18 U.S.C. § 2422(b)). Federal statute directs that if Mayer has a qualifying predicate offense, a life sentence is mandatory on each of these counts. 18 U.S.C. § 3559(e).

**1. Preliminary analysis.**

A defendant convicted of a "Federal sex offense" involving a minor "shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim." 18 U.S.C. § 3559(e)(1). The statute enumerates convictions that qualify as "Federal sex offenses," including in relevant part, production of child pornography (18 U.S.C. § 2251(a)) and coercion and entice of a minor (18 U.S.C. § 2422(b)). 18 U.S.C. § 3559(e)(2)(A). A "minor" is a child under the age of 17. 18 U.S.C. § 3559(e)(2)(B). Mayer was convicted of production of child pornography and coercion and enticement of a minor and his victim, Minor A, at most 15 years old at the time. Thus, Mayer's convictions on Counts 1, 2, and 5, qualify him for a

mandatory life sentence, so long as: (1) his 2012 conviction for attempted third degree criminal sexual conduct is a "prior sex conviction" and (2) the victim of that crime was a minor.

The second part of this equation is easily answered in the affirmative—the same jury that convicted Mayer of the instant offenses found that he was in fact convicted of attempted third degree criminal sexual conduct in 2012 and his victim, G.S., was a minor. In fact, G.S. was 13 years old at the time Mayer attempted to rape her. This leaves only the question of whether Mayer's 2012 conviction fits 3559(e)'s definition of a prior sex conviction.

**2. The Defendant's 2012 conviction qualifies as a predicate offense.**

"Prior sex conviction" is defined, in relevant part, as "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was . . . a State sex offense." 18 U.S.C. § 3559(e)(2)(C). A "State sex offense" is defined as, "an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense" had it included a federal jurisdictional nexus/hook. 18 U.S.C. § 3559(e)(2)(B).

To determine whether Mayer's 2012 Minnesota conviction is one of the enumerated Federal sex offenses in § 3559(e)(2)(A), the categorical approach[6] is

---

[6] The categorical approach has a growing number of critics. *See, e.g., Quarles v. United States,* 139 S. Ct. 1872, 1880 (2019) (Thomas, J., concurring) (describing the "absurdity" of the categorical approach); *Ovalles v. United States*, 905 F.3d 1231, 1253–54 (11th Cir. 2018) (Pryor, J., concurring) (describing the results produced by employing the categorical approach as "nuts"); *United States v. Chapman*, 866 F.3d 129, 136 (3d Cir. 2017) (Jordan, J., concurring) (noting that the categorical approach

employed to determine if the "least culpable conduct" under Minnesota's third degree criminal sexual conduct statute "falls within the scope of activity that the [relevant] federal statute penalizes." *See United States v. Kroll*, 918 F.3d 47, 52 (2d Cir. 2019). If the state statute sweeps more broadly, that is, if it criminalizes more conduct than the federal statute, a conviction under the state statute cannot serve as a predicate conviction. *Id.*; *see United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021)

Mayer was convicted specifically under Minnesota Statute § 609.344, subd.1(b). (Gov't Sent. Ex. B; Trial Ex. 213). In 2012, that statute defined third degree criminal sexual conduct as:

> A person who engages in sexual penetration with another person [where]:
>
> the complainant is at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant. In any such case if the actor is no more than 120 months older than the complainant, it shall be an affirmative defense, which must be proved by a preponderance of the evidence, that the actor reasonably believes the complainant to be 16 years of age or older. In all other cases, mistake as to the complainant's age shall not be a defense. If the actor in such a case is no more than 48 months but more than 24 months older than the complainant, the actor may be sentenced to imprisonment for not more than five years. Consent by the complainant is not a defense.

---

requires "that judges ignore the real world"); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) (highlighting the "counterintuitive results" often produced by the categorical approach). Nonetheless, it remains the United States Supreme Court's precedential authority, although in increasingly fractured opinions, on how to answer questions like the one here. *See Borden v. United States*, 141 S. Ct. 1817, 1822 (2021).

Minn. Stat. § 609.344, subd. 1(b) (2010).[7] Thus, the least culpable conduct that would result in a conviction under this statute would be a defendant who engaged in sexual penetration with a victim who was 15 years old, where the defendant was 25 months older than the victim.

That conduct could fall within the scope of coercion and enticement of a minor (18 U.S.C. § 2422(b)), which is an enumerated Federal sex offense in 18 U.S.C. § 3559(e)(2)(A). The relevant elements of coercion and enticement are: (1) the defendant knowingly persuaded, induced, enticed, or coerced an individual under the age of 18 to engage in sexual activity; (2) the defendant believed the individual was under the age of 18; and (3) if the sexual activity had occurred, the defendant could have been charged with a criminal offense.[8] *See* Manual of Model Criminal Jury Instructions for the Eighth Circuit § 6.18.2422B (2017).

The sexual penetration of a 15-year-old does not happen out of the blue—it necessarily requires some degree of knowing persuasion, inducement, enticement, or coercion by the defendant. Sexual penetration is certainly sexual activity. And the sexual penetration of a 15-year-old is criminal under numerous state and federal statutes.

---

[7] Available at: https://www.revisor.mn.gov/laws/2010/0/270/

[8] The state and federal statutes at issue both account for attempt, meaning the fact Mayer was convicted of attempted third-degree criminal sexual conduct is immaterial to this analysis. *See* Minn. Stat. § 609.17, subd. 1; Manual of Model Criminal Jury Instructions for the Eighth Circuit § 6.18.2422B (2017).

This leaves only the element of the defendant's belief regarding the victim's age. The federal statute requires that the defendant believe the victim is under 18. The state statute has no directly analogous requirement but does allow an affirmative defense to some defendants who reasonably believe the victim is 16 or older. The result is that the federal statute sweeps more broadly than the state statute. For instance, a 23-year-old defendant who reasonably believed his victim was 16 (but who was in fact 15) when he sexually penetrated her would be guilty of coercion and enticement under 18 U.S.C. § 2422(b), but not third degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b) (2010).

Since Minn. Stat. § 609.344, subd. 1(b) (2010) and 18 U.S.C. § 2422(b) criminalize roughly analogous conduct, but § 2422(b) sweeps more broadly, Mayer's 2012 conviction for attempted third degree criminal sexual conduct is a State sex offense. *See* 18 U.S.C. § 3559(e)(2)(B). As such, it qualifies as a predicate offense and a mandatory life sentence applies to Mayer's convictions on Counts 1, 2, and 5.

Of course, as explained below, a life sentence is appropriate in this case even if it were not statutorily mandated. The Government respectfully asks that even if the Court applies § 3559(e), it also find that it would impose a life sentence under Guidelines and 18 U.S.C. § 3553(a) regardless. This will avoid any need for remand should an appellate court find that 18 U.S.C. § 3559(e) does not apply. *See United States v. Johnson*, 848 F.3d 872, 879–80 (8th Cir. 2017); *United States v. Watters*, 733 F. App'x 324, 327 (8th Cir. 2018).

**B. Statutory mandatory minimums.**

Mayer's 2012 conviction for attempted third degree criminal sexual conduct is also a predicate offense that triggers statutory mandatory minimum sentences on his convictions for production of child pornography (if 3559(e) is not applied), distribution, receipt, and possession of child pornography (Counts 1–4, 7).

Production, distribution, receipt, and possession of child pornography all carry enhanced mandatory minimum sentences where the defendant has, in relevant part, "one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward." 18 U.S.C. §§ 2251(e), 2252(b)(1), 2252(b)(2) (emphasis added). Where the defendant has such a prior conviction, the mandatory minimum sentence for production is 25 years (18 U.S.C. § 2251(e)), 15 years for distribution and receipt (18 U.S.C. § 2252(b)(1)), and 10 years for possession (18 U.S.C. § 2252(b)(2)).

To determine whether a prior conviction qualifies as a predicate under §§ 2251(e) or 2252(b), courts again employ the categorical approach. *United States v. Kushmaul*, 984 F.3d 1359, 1365 (11th Cir. 2021). Because the terms "relating to," "aggravated sexual abuse," "sexual abuse," and "abusive sexual contact involving a minor" are undefined in the relevant statutes, they are given their ordinary and common meaning in this analysis. *United States v. Grimes*, 888 F.3d 1012, 1016 (8th Cir. 2018); *Kushmaul*, 984 F.3d at 1365. Thus, "relating to" means "to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association or connection with." *Grimes*, 888 F.3d at 1016 (quotations omitted); *see Kushmaul*, 984

F.3d at 1365 (same). This broad definition is significant as it means that a prior conviction need not be an exact elemental match to the generic federal crimes of aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor to qualify as a §§ 2251(a) or 2252(b) predicate, even under the categorical approach. *See United States v. Sonnenberg*, 556 F.3d 667, 669–71 (8th Cir. 2009); *United States v. Sullivan*, 797 F.3d 623, 635–641 (9th Cir. 2015); *United States v. Hardin*, 998 F.3d 582, 586–91 (4th Cir. 2021).

The question then is whether Mayer's 2012 conviction for attempted third degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b) (2010) "stands in some relation to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor." *Id.* It plainly does. At the time of Mayer's conviction, Minn. Stat. § 609.344, subd. 1(b) (2010) criminalized a defendant's sexual penetration of a minor who was between the ages of 13 and 15.[9] By the statute's plain terms, it stands in some relation to, at a minimum, sexual abuse and abusive sexual contact involving a minor.

Courts have concluded that convictions under Minnesota's felony criminal sexual conduct statutes are §§ 2251(e) and 2252(b) predicate offenses. *See, e.g.*, *United States v. Linngren*, 652 F.3d 868, 869–70 (8th Cir. 2011) (Minnesota fifth degree criminal sexual conduct); *United States v. Shern*, 3:06-CR-50, 2007 WL

[9] Courts have consistently held that "relating to" encompasses attempt crimes, such that the fact Mayer was convicted of attempted third degree criminal sexual conduct does not disqualify that conviction as a predicate under §§ 2251(e) or 2252(b). *See United States v. Nelson*, No. 20-3154, 2021 WL 209127 (6th Cir. Jan. 21, 2021) (collecting cases).

201122, at *1–2 (D.N.D. Jan. 23, 2007) (Minnesota second degree criminal sexual conduct); *Johnson v. Kallis*, No. 19-2320, 2021 WL 2793555, at *2 (7th Cir. May 19, 2021) (in dicta, Minnesota fifth degree criminal sexual conduct).   Similarly, other states' statutory rape and child sexual exploitation statutes (which closely resemble Minn. Stat. § 609.344, subd.1(b)), qualify as predicate offenses.   *See, e.g., United States v. Cover*, 703 F.3d 477, 480–81 (8th Cir. 2013); *Sullivan*, 797 F.3d at 635–641; *Sonnenberg*, 556 F.3d at 669–71; *Hardin*, 998 F.3d at 586–91.

Because Mayer's 2012 attempted third-degree criminal sexual conduct conviction is a predicate offense under §§ 2251(e) and 2252(b), the following statutory mandatory minimums apply:

Count 1 – Production of Child Pornography – 25 years[10] (18 U.S.C. § 2251(e))

Count 2 – Production of Child Pornography – 25 years (18 U.S.C. § 2251(e))

Count 3 – Distribution of Child Pornography – 15 years (18 U.S.C. § 2252(b)(1))

Count 4 – Possession of Child Pornography – 10 years (18 U.S.C. § 2252(b)(2))

Count 5 – Coercion and Enticement of a Minor – 10 years (18 U.S.C. § 2422(b))[11]

Count 6 – Committing an Offense Involving a Minor While Required to Register as a Sex Offender – 10 years, consecutive (18 U.S.C. § 2260A)[12]

Count 7 – Receipt of Child Pornography – 15 years (18 U.S.C. § 2252(b)(1))

---

[10] The mandatory minimum of § 2251(e) would only apply if § 3559(e) is not applied.

[11] Count 5's 10-year mandatory minimum contains to predicate offense requirement. *See* 18 U.S.C. § 2422(b).

[12] Count 6's 10-year mandatory consecutive sentence applies regardless of any prior conviction and without regard for § 3559(e).   *See* 18 U.S.C. § 2260A.

## V.    The Guidelines and the Defendant's Objections to the PSR.

The PSR correctly calculated Mayer's Guidelines and the Government has no objections.   Because of Mayer's prior sex offense conviction, 18 U.S.C. § 3559(e) mandates a life sentence on each of the production of child pornography and coercion and enticement of a minor counts.  (PSR at ¶ 150).  Mayer's conviction for committing a felony offense involving a minor while required to register as a sex offender (18 U.S.C. § 2260A) mandates an additional ten-year consecutive sentence.  (*Id.* at ¶¶ 92, 150).  Thus, the statutorily mandated sentence for Mayer is life plus ten years.

Even if such a sentence were not mandated, the Guidelines recommend the same.  Mayer's total adjusted offense level is 43.[13]  (*Id.* at ¶ 91).  With 27 criminal history points, Mayer's criminal history category is VI.[14]  (*Id.* at ¶¶ 110–113).  The resulting recommended Guidelines sentence is life plus ten years.  (*Id.* at ¶ 152).

### A.    The Defendant's objections to the PSR.

Mayer filed a litany of objections to the PSR.  (*See* Def.'s Objs.).  Some are frivolous.  Most lack any legal or factual support.  Those that remain have no impact on the Guidelines calculation.  The Court should overrule or dismiss them all.

---

[13] Mayer's total offense level is actually 48 but is adjusted because the Guidelines do not go higher than 43.  (PSR at ¶¶ 89, 91).  This fact is significant because even if the Court sustained some of Mayer's objections to the offense level calculation, his total adjust offense level would likely remain 43.  (*See* PSR at A.4).

[14] The enormous number of criminal history points Mayer has is significant.  Even if the Court were to find some of those points uncountable, criminal history category VI only requires 13 points, which Mayer undoubtedly has.

**1. The Defendant's frivolous objections.**

Mayer objects to "the factual assertion that he was convicted of the alleged 'Attempted third degree criminal sexual conduct.'" (Def.'s Objs. at 1). The records of Mayer's conviction for this crime were introduced at trial. (Trial Exs. 213, 214). Mayer himself testified he was convicted of attempted third degree criminal sexual conduct in 2012. (Trial Tr. Vol. IV at 725:10-17; Trial Tr. Vol. V at 832:15-22). Given this evidence and his own testimony, Mayer's objection to the "factual assertion" of his conviction is the definition of frivolous. It should be summarily dismissed.

Mayer lobs numerous generic, non-specific objections that various adjustments "do[] not apply" and/or against the factual assertions of various PSR paragraphs. (Def.'s Objs. at 5). He makes no effort whatsoever to detail his objections, let alone support them with facts or law. The Eighth Circuit has long required that a defendant's objections "be made with specificity and clarity." *United States v. Davis*, 583 F.3d 1081, 1095 (8th Cir. 2009) (quotations omitted). A defendant may not rely on "implied objections" to factual statements in the PSR but must "alert the Government as to which specific facts it need[s] to substantiate at the hearing." *United States v. Razo-Guerra*, 534 F.3d 970, 976 (8th Cir. 2008). A defendant's bald contention that he "[does] not admit the facts" contained in certain paragraphs "lack[s] the specificity and clarity necessary to preclude the district court from relying on the facts contained in the PSR." *United States v. Pepper*, 747 F.3d 520, 524 (8th

Cir. 2014). Mayer's generic, non-specific, and unsupported objections should be overruled.[15]

**2. The Defendant's legally and factually meritless objections.**

**a. Registration as a sex offender.**

Mayer objects that it was not established that he had to register as a sex offender because Minnesota's sex offender registry is part of a "Predatory Offender Registry." (Def.'s Objs. at 1, 6). This objection lacks any merit.

To the extent Mayer's objection is factual, there was sufficient evidence he was required to register as a sex offender introduced at trial. Minnesota Department of Corrections Supervisory Probation Officer Kelly Blake, Albert Lea Police Detective Julie Kohl, and FBI Special Agent Robert Blackmore all testified that Mayer was required to, and in fact did, register as a sex offender due to his prior sex offense conviction. Detective Kohl and Special Agent Blackmore explained that the Minnesota Predatory Offender Registry functions as the state's sex offender registry. Mayer's Minnesota Predatory Offender Registry file was introduced as evidence. (Trial Ex. 1). Mayer himself admitted he was required to and did register as a sex offender, although he later tried to walk back that testimony. (Trial Tr. Vol. V at 832:15–22, 863:10–11, 918:1–11).

---

15 At a minimum, the Court should order that Mayer specify his objections prior to sentencing such that the Government can point to the factual support in the trial record, or prepare to prove up additional facts and argue the issue.

To the extent Mayer's objection is a legal one, the Court previously rejected his argument. (*See* Dkt. 34 at 3–12; Dkt. 37 at 1–4). The issue need not and should not be revisited at sentencing.

**b. Acceptance of responsibility.**

Mayer apparently objects to not receiving acceptance of responsibility credit because he "took the stand and explicitly acknowledged and accepted responsibility for the alleged[[16]] conduct in Counts 3, 4, and 9." (Def.'s Objs. at 3 (referring to final PSR ¶¶ 36–37)). The Guidelines are clear that because credit for acceptance of responsibility relates, at least in part, to the time and resources saved by a defendant who admits his crimes, a defendant who goes to trial rarely receives such credit. U.S.S.G. § 3E1.1, cmts. 1 and 2. Mayer took his case to trial on all counts, as was his right, but in doing so (and contesting the facts as to each count) he foreclosed receiving any credit for acceptance. Mayer cannot have his cake and eat it too. It was not until closing arguments, after the Government presented its entire case, that defense counsel conceded the Government had proven Counts 3, 4, and 9. (Trial Tr. Vol. V at 962:1–11).

Moreover, Mayer did not fully accept responsibility for any of his crimes, even those to which he ultimately admitted. To receive credit, the defendant must "clearly demonstrate" acceptance of responsibility for his crimes. U.S.S.G. § 3E1.1(a). Mayer did no such thing. Although he admitted using Minor A to produce child pornography

---

[16] The frivolousness of this claim is born out in the objection itself. Mayer wants credit for accepting responsibility for some of his crimes, but in the same breadth describes those crimes as "alleged."

at trial, he steadfastly denies he is guilty of Counts 1 and 2. Mayer confessed to distributing child pornography (Count 3), but quibbles with who the recipient of that distribution was, Minor A or her mother. The evidence is clear, Mayer sent the child pornography to Minor A as a threat and she received it. At trial, Mayer lied about whether he deceived Minor A, and other minors, about his name, age, and status as a convicted sex offender—a material issue as to Counts 1, 2, and 5. And he concocted a nonsensical and clearly false story that the copious amounts of child pornography found on both his phones was the result of a different sex offender using those devices.

Mayer's lies while testifying, and other efforts at obstruction, further weigh against crediting him with acceptance. U.S.S.G. § 3E1.1, cmt. 4. Post-conviction, Mayer has shown his true position about whether he is culpable in any way—sending letters to family, friends, and strangers claiming he is the victim, "catfished" by Minor A and wrongly convicted. By the plain language of U.S.S.G. § 3E1.1 and its related commentary, Mayer's partial confession at trial, in the face of his ongoing falsehoods and efforts at obstruction, does not earn him credit for acceptance of responsibility.

**c. Not grouping Count 5 with Count 1 or Count 2.**

Mayer objects that the PSR does not group Count 5 (coercion and enticement of a minor) with either Count 1 or Count 2 (production of child pornography and coercion and enticement of a minor). (Def.'s Objs. at 4 (referring to final PSR ¶ 39)). He argues that the harm from Count 5 is indistinct from harm in Counts 1 and 2, and rather "merely alleges the overall scheme or plan that included the conduct alleged in both Counts 1 and 2." (*Id.*). This is a variation of a multiplicity argument Mayer

previously made and the Court rejected. (*See* Dkt. 108 at 6–7). His objection fares no better.

The Guidelines are clear, offenses that visit distinct harms on a single victim, or involve distinct harm to multiple victims, do not group. U.S.S.G. § 3D1.2. Offenses calculated under § 2G2.1 of the Guidelines are specifically recognized as non-grouping. *Id.* Mayer's convictions for production of child pornography (Counts 1 and 2) are both assessed under § 2G2.1 and therefore cannot group.

Nor can Count 5 (coercion and enticement of a minor) group with either Count 1 or 2. As Mayer himself acknowledges, Count 5 involved the "overall scheme or plan" he executed to exploit Minor A by using her to produce child pornography. The evidence at trial was that far beyond the specific images and instances of production charged in Counts 1 and 2, Mayer used Minor A to produce child pornography almost daily for months. Each instance of uncharged production is a unique harm he visited on Minor A, all of which are covered by Count 5. Thus, just as Counts 1 and 2 represent distinct harm to the same individual and do not group, Count 5 represents harm distinct from that in Counts 1 and 2 and therefore cannot group with either.

As the Guidelines explain, although counts that involve the same victim and two or more transactions connected by a common criminal objective will often group (3D1.2(b)), "This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm)." U.S.S.G. § 3D1.2, cmt. 4. Courts have consistently

rejected arguments to group counts of production of child pornography with coercion and enticement of a minor, while noting with approval when they are not grouped. *See, e.g., United States v. McCall*, 699 F. App'x 452, 456 (6th Cir. 2017); *United States v. Macaluso*, 460 F. App'x 862, 866 (11th Cir. 2012); *see also United States v. Kiel*, 454 F.3d 819, 822 (8th Cir. 2006) (refusing to group multiple production of child pornography counts that related to a single victim, explaining "Each time that Kiel molested a child, he inflicted a separate and distinct harm upon that child; therefore, his actions cannot be considered substantially the same harm for grouping purposes under § 3D1.2.").

**d. Enhancement for offenses involving sexual contact.**

Mayer objects to the enhancement for a child pornography offense that involves sexual contact (U.S.S.G. § 2G2.1(b)(2)(A)). (Def.'s Objs. at 4 (referring to final PSR ¶¶ 46, 55)). He argues that to apply, the "actor" must have had the specific intent to arouse or gratify sexual desire. (*Id.*). Mayer claims the actor here is Minor A and that evidence of her intent when she touched herself is "entirely absent." (*Id.*). Mayer's argument conveniently ignores the evidence at trial and dismisses the plain language of the Guidelines and statute.

In relevant part, a two-level enhancement applies where a child pornography offense involved "the commission . . . of sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). The Guidelines refer to the definition of "sexual contact" found in 18 U.S.C. § 2246(3). U.S.S.G. § 2G2.1, cmt. 2. That statute defines sexual contact as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast,

inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3) (emphasis added).

At trial, Minor A testified that Mayer directed her to show him images of her genitals and to masturbate for him, which she did. Texts and chats between them confirmed this testimony. Mayer testified that he asked Minor A to send him pictures of her vagina. (Trial Tr. Vol. V at 866:15-16). Although he falsely denied asking her to masturbate, he admitted she sent him images of her doing so and that he enjoyed receiving them and wanted more. (*Id.* at 866:17 – 867:4, 867:22 – 868:4). Mayer's texts with Minor A made it clear that he sexually gratified himself to these images, using them to masturbate until his "balls [were] tender." (Trial Ex. 111m; *see also* Trial Exs. 111b, 111d, and 111h).

Mayer assumes, with no legal support, that only the victim can be the "actor" envisioned by § 2246(3). The statute's plain language makes clear that any person—defendant, victim, or third party—can be the subject/actor related to sexual contact. 18 U.S.C. § 2246(3). Mayer masturbated to the sexually explicit images he used Minor A to produce, thereby "intentionally touching" his "genitals" with the purpose of "arousing [and] gratifying" his sexual desire for children. *See* 18 U.S.C. § 2246(3). Mayer also directed Minor A to touch herself and masturbate, thereby causing the "intentional touching" of her "genitals" with the purpose of "arousing [and] gratifying" his sexual desire for children. *See* 18 U.S.C. § 2246(3). Moreover, even if Minor A were the only subject/actor to consider, Mayer testified that she "enjoyed," was

aroused by, and gratified herself to, the intimate parts of their relationship. (Trial Tr. Vol. IV at 761:13 – 762:14). That too satisfies the definition of "sexual contact." The enhancement applies.

**e. Enhancement for distribution of child pornography.**

Mayer objects to the enhancement for distribution of possessed or received child pornography (U.S.S.G. § 2G2.2(b)(3)(F)). (Def.'s Objs. at 4 (referring to final PSR ¶ 63)). He claims it is "patently false" that he distributed child pornography on the Russian child pornography site he was fond of visiting. (*Id.*). The evidence at trial, and which the Government will develop at sentencing, clearly shows otherwise.

As detailed above, Mayer visited a Russian child pornography site dozens of times a day for months in 2017 and 2018. His 2017 and 2018 Phones each contained thousands of images of child pornography and erotica. Each year, Mayer also set up profiles on this Russian child pornography site. (Trial Exs. 14 and 124). This site is constructed around such profiles, which are created by those who upload images to the site, enabling other users to access and download them.[17]

Mayer was intimately familiar with how this Russian child pornography website operated—it was his primary online destination where he spent hours every day. And Mayer was certainly not shy about hiding his pedophilia on this site. His 2018 account contained the username "unclebadtouchher" and the "about" section read "I like little boys and girls I just want to do so many things to them." (Trial Ex.

[17] FBI Special Agent Dennis Howe will provide testimony at sentencing about the operation of the Russian child pornography website.

124). Data from his 2018 phone specified that Mayer's "title" on this account was "album editor," suggesting he had the ability to create and share albums. (*Id.*). This is enough to conclude, by a preponderance of the evidence, that Mayer not only downloaded and viewed child pornography on this site but shared and distributed his own collection.

**f. Enhancement for images depicting sadistic or masochistic conduct.**

Mayer objects to application of the enhancement related to possession/receipt of child pornography that depicts sadistic or masochistic conduct (U.S.S.G. § 2G2.2(b)(4)(A)). (Def.'s Objs. at 4 (referring to final PSR ¶ 64)). He complains this application is "completely unsupported." (*Id.*). Mayer ignores the evidence from trial.

The FBI successfully unlocked Mayer's 2017 and 2018 Phones. Each contained hundreds, if not thousands, of images of child pornography. FBI Forensic Examiner Vicki Klemz testified she reviewed the images on each device and discovered that many depicted very young children—even infants—being raped and abused, performing sex acts on adults or other children, or having other sex acts performed on them. (Trial Tr. Vol. II at 287:10 – 288:25, 292:18 – 294:8, 324:13–15, 393:11 – 394:8). The existence of these disturbing images is no surprise considering Mayer searched the internet using phrases like "extremely tiny teens raped," "Daddy please stop," and "child abuse photos." Images of children being vaginally, orally, or anally penetrated are "per se sadistic" under Eighth Circuit precedent. *United States v. Burns*, 834 F.3d 887, 890 (8th Cir. 2016); *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010).

**g. Enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor.**

Mayer objects to application of the enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor (U.S.S.G. § 2G2.2(b)(5)), arguing that the enhancement does not apply "merely because more than one image was involved [presumably meaning because Mayer possessed/received more than one image of child pornography]." (Def.'s Objs. at 5 (referring to final PSR ¶ 65)). Mayer misses the point. This enhancement applies because of his pattern of sexually exploiting minors over six years. In 2012, he attempted to rape G.S. In 2017, he possessed and received copious amounts of child pornography from the internet. In 2018, Mayer sexual exploited Minor A (and at least four other teenage girls), used her to produce child pornography, possessed that child pornography (as well as hundreds of other images he downloaded from the internet), and then distributed those images back to her as a threat. If this is not a pattern of activity involving the sexual abuse or exploitation of a minor, it is difficult to image what would qualify.

**3. The Defendant's objections that do not impact the Guidelines calculation.**

Mayer's remaining objections—not addressed by changes to the final PSR or which are not expressly addressed herein—fall into at least one of the following categories. First, objections based on Mayer's version of the facts, but where evidence to the contrary was educed at trial. Second, objections that do not impact the Guidelines calculations.

As to the first category, the Court can determine, based on the extensive trial record, whether Mayer's objections have any merit. To the extent it concludes any do, sustaining them will not impact the Guidelines calculation.

## VI. The Defendant Should Receive a Life Sentence Under the 3553(a) Factors.

Regardless of how the Court decides the § 3559(e) mandatory life issue, the Government asks that it also find that a sentence of life plus ten years is appropriate pursuant to 18 U.S.C.§ 3553(a). Doing so will avoid remand should the Eighth Circuit decide the § 3559(e) question differently. *See Johnson*, 848 F.3d at 879–80; *Watters*, 733 F. App'x at 327.

### A. The nature and circumstances of the offenses call for a life sentence.

Courts must examine the nature and circumstances of the offenses committed by the defendant. 18 U.S.C. § 3553(a)(1). Mayer's criminal conduct is extensive, heinous, and despicable. For the past decade, he has victimized some of society's most vulnerable, children. He engaged in "passive" victimization—downloading thousands of images of child pornography, many of which depict the gruesome rape and abuse of children, some of whom are toddlers. Mayer also engaged in "active" victimization—he posed as a teenager, using a fake name, and trolled websites looking for children to exploit. When he found one, like Minor A, he subjected her to an unrelenting stream of lies, manipulation, and demands, all with the single goal of using them to produce child pornography and keep his crimes hidden. Worst, when these minors, mere children between the ages of 12 and 15, did not satisfy Mayer, he

berated them with vicious verbal attacks and threats.  To top it off, Mayer has consistently tried to avoid culpability for his crimes by blaming his victims, calling them liars, manipulating others (including his own mother) into lying for him, and presenting himself as the "true" victim.

### B.   The Defendant's history and characteristics support a life sentence.

Mayer's history and characteristics offer few mitigating considerations, but many aggravating ones.  *See* 18 U.S.C. § 3553(a)(1).  As detailed above, Mayer had a stable childhood free from abuse or other significant hardships.  He has no physical ailments.  To the extent he suffers from mental health issues, he will not acknowledge them or seek meaningful, sustained treatment.  (PSR at ¶¶ 126–128).  Mayer steadfastly refuses to participate in sex offender treatment.  (*Id.* at ¶ 127).  Only Mayer's long running substance abuse issues may counsel some leniency.  However, Mayer has repeatedly failed to complete or attend substance abuse treatment and does not see some of his substance abuse (e.g., marijuana) as a problem.  (*Id.* at ¶ 130).

Conversely, many of Mayer's characteristics and much of his history support a life sentence.  Mayer lacks any remorse for his crimes.  His crocodile tears at trial aside, his communications with and treatment of others shows he respects no one and regrets nothing other than the fact that he was caught.  For Mayer, people are simply objects to be used and/or abuse—children for sexual exploitation, law enforcement and prosecutors to threaten and assault, his own mother to cover up his criminality. Mayer's extensive criminal history documents his lifelong dedication to disrespecting

others through criminal conduct. He started with battery as a juvenile and graduated to assaults, burglaries, and the sexual exploitation of children as an adult.

Nothing in Mayer's characteristics and history weighs against a life sentence, while much of it weighs in favor.

**C. A life sentence will correctly acknowledge the seriousness of the offenses, the need to prompt respect for the law, and justly punish the Defendant.**

Since 2012, Mayer has victimized countless children by sexual exploiting them. It is difficult to image a more serious set of criminal offenses than those of which he has been convicted. And yet Mayer shows no respect for the law—he flouts it, convinced he can avoid being held accountable through his threats, lies, and deception. Although Mayer may never respect the law, or even the basic social norms of civil society, his sentence must send the message to others that such flagrant, repeated disrespect comes with stiff penalties.

Although severe, a life sentence is not unjust for Mayer. Minor A and G.S. showed tremendous courage reporting and testifying against Mayer in the face of his exploitation and threats. Just punishment should ensure that no other child is forced to stop Mayer after he exploits them. Only a life sentence recognizes the seriousness of Mayer's offenses, promotes respect for the law, and justly punishes Mayer for his criminality. *See* 18 U.S.C. § 3553(a)(2)(A).

**D. A life sentence will afford adequate deterrence.**

Sentencing Mayer to life in prison, thereby effectively eliminating his ability to reoffend, is the only way to adequately deter him from sexually exploiting children

iin the future. *See* 18 U.S.C. § 3553(a)(2)(B). Mayer has repeatedly shown he is incapable of abiding by the basic laws of society. In fact, in his entire adult life, Mayer has not gone a full year without committing a criminal offense, other than when he was incarcerated. (PSR at ¶¶ 97–109). His collective prior sentences imposed more than 17 years of incarceration and yet this did nothing to deter him from committing the instant offenses. (*Id.*). There is no reason to think that even a significant sentence, but one less than life, will deter Mayer from committing still more crimes the moment he is released.

**E. Only a life sentence will protect the public from the Defendant.**

The public will not be safe unless Mayer is incarcerated for the rest of his life. *See* 18 U.S.C. § 3553(a)(2)(C). As he has repeatedly shown, if released, he will reoffend. Even when incarcerated, Mayer commits crimes and engages in other destructive conduct. Previous efforts to supervise him failed. Even the requirement that he register as a sex offender cannot protect children like Minor A because Mayer is adept at hiding his identity, lying, and utilizing the anonymity of the internet to his advantage.

Mayer has already actively victimized at least six children, as well as passively victimized thousands more through his insatiable appetite for child pornography. As he showed in 2012, when he can commit hands-on sex offenses, he will. If a hands-on victim is unavailable, he finds a way to access the internet to satisfy his prurient desires in the relative safety and anonymity of cyberspace. Mayer should not have

the opportunity to reoffend and irreparably damage more children. Anything less than a life sentence may provide him with precisely that chance.

**F.    The statutes and Guidelines allow for, and even demand, a life sentence.**

As set forth above, 18 U.S.C. § 3559(e) applies and requires Mayer receive a life sentence. Even if life were not mandatory, the Guidelines recommend it as the appropriate sentence. *See* 18 U.S.C. § 3553(a)(4). Regardless of how the Court rules on § 3559(e), it should also hold that a life sentence is appropriate under the Guidelines and § 3553(a) factors.

**G.    A life sentence for the defendant is not disproportionate.**

Life sentences are reserved for those defendants whose conduct is exceptionally egregious and damaging. Statutory maximums often prohibit such a sentence. But life sentences are statutorily allowed, or even required, for defendants, like Mayer, who repeatedly sexually exploit and abuse children. *See, e.g.,* 18 U.S.C. §§ 2241(c), 2244(a)(5), 2251(e), 2422(b), 3559(e). The Guidelines similarly recommend life only for the most serious crimes, those where the defendant's offense level is 43 (or more). Few crimes score this high, but those involving the sexual exploitation or abuse of children can. These facts reflect the collective judgment of Congress and the United States Sentencing Commission defendants who abuse and violate children, more than nearly any other category of criminal, may require a life sentence. Mayer is such a defendant and a life sentence for him is appropriate.

Sentencing Mayer to life will not create unwarranted disparities with the sentences of other similar offenders. Courts have sentenced defendants comparable

to Mayer, or distinct in that they had better arguments for a lower sentence, to life. *See, e.g., United States v. Kemache-Webster*, 497 F. App'x 339, 343–44 (4th Cir. 2012) (upholding life sentence for defendant, convicted at trial of attempted coercion and enticement of a minor, noting the defendant's lengthy criminal history, attempts to circumvent court orders, and failure to accept the seriousness of his crime); *United States v. Trader*, 981 F.3d 961, 970–71 (11th Cir. 2020) (upholding Guidelines life sentence for defendant convicted, via plea, of multiple child pornography offenses despite the defendant's young age (32) and his lack of serious criminal history); *United States v. Harding*, 696 F. App'x 955, 958–59 (11th Cir. 2017) (upholding life sentence of a defendant, convicted via a plea on coercion and enticement of a minor and child pornography offenses, despite the defendant's considerable mental health and substance abuse issues); *United States v. Sebolt*, 598 F. App'x 159, 160–61 (4th Cir. 2015) (upholding life sentence for a defendant, convicted via a plea of advertising child pornography, despite the fact the district court reject the government's motion for a downward departure, noting the seriousness of the offense and evidence the defendant would continue to offend); *United States v. Vickers*, 708 F. App'x 732 (2d Cir. 2017) (upholding life sentence for defendant convicted at trial on two counts of trafficking minors for sexual activity).

## CONCLUSION

For years, Mayer has terrorized, exploited, and abused those around him, especially children.  Enough is enough.  Mayer's victims deserve justice and just punishment demands a significant sentence.  There is no hope that Mayer can be

rehabilitated—he has no interest in reformation. No amount of supervision can protect the public from Mayer—if not incarcerated, he will reoffend. Life plus ten years is mandatory and the Guidelines' recommended sentence for good reason. The Government respectfully requests that the Court sentence Mayer to life plus 10-years in prison, and that it specifically find that this to be the appropriate sentence regardless of the applicability of 18 U.S.C. § 3559(e).

Dated: January 14, 2022

Respectfully submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

*/s/ Alexander D. Chiquoine*

BY: ALEXANDER D. CHIQUOINE
JOSEPH H. THOMPSON
Assistant United States Attorneys