UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 19-cr-96 (WMW/HB)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

TRAVIS KYLE MAYER,

      Defendant.

**THE GOVERNMENT'S REPLY SENTENCING POSITION**

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Alexander D. Chiquoine and Joseph H. Thompson, Assistant United States Attorneys, hereby submits its reply position regarding sentencing. The majority of the Defendant's objections continue to lack legal and factual merit. The Government offers this reply to address the Defendant's objections and to narrow the issues in advance of sentencing. The Government maintains that a sentence of life plus ten years is the required and appropriate sentence

**I.  A Life Sentence is Mandatory.**

    **A.  The necessary factual record exists.**

Mayer argues that 18 U.S.C. § 3559(e)'s mandatory life sentence does not apply because the jury did not explicitly determine that his conviction for attempted third degree criminal sexual conduct predated his instant offenses. (Def.'s Sent. Position at 1–3 [Dkt. 245]). This argument has no basis in fact or law.

The jury found Mayer guilty, in relevant part, of two counts of production of child pornography (18 U.S.C. § 2251(a)) and one count of coercion and enticement of a minor (18 U.S.C. § 2422(b)) "as charged in . . . the Indictment." (Dkt. 217 at 1–2, 3). The Indictment charged that Mayer committed the instant offenses in 2018, "having been convicted in 2012" of attempted third degree criminal sexual conduct. (Dkt. 140 at 1–3, 5). The jury, by a separate special verdict form, also found that Mayer "was convicted of an offense in Le Sueur County, Minnesota, in which a victim was a minor who was under the age of 17." (Dkt. 218 at 3).

There is no ambiguity in the record as to what offense the jury's verdict referenced—it was Mayer's 2012 conviction for attempted third degree criminal sexual contact with a 13-year-old girl. (Trial Exs. 213, 214 (consisting of certified copies of Mayer's 2012 conviction)). The Government referred to Mayer's 2012 conviction and the exhibits related to that conviction in its closing. (Trial Tr. Vol. VI at 1025:10 – 1026:7 [Dkt. 242]). The Court correctly instructed the jury that it could rely on those exhibits. (*Id.* at 1029:6–9).

Mayer now claims that because the jury did not explicitly find that his prior conviction occurred before his instant offenses, the Court may not make that determination and thus cannot impose a life sentence under 18 U.S.C. § 3559(e). Mayer is incorrect. First, basic logic dictates that the jury necessarily found that his 2012 conviction was prior to his instant offenses. *See, e.g., United States v. Medina-Huerta*, 208 F. App'x 599, 601–02 (9th Cir. 2006) (holding that the sentencing court did not err by applying a statutory enhancement for a prior removal when the jury

was presented with evidence of a specific prior removal and therefore found "necessarily beyond a reasonable doubt that Medina-Huerta was removed in 1996, a time subsequent to his December 1991 conviction").

Second, it is black letter law that sentencing courts may decide "the fact of a prior conviction," and this determination necessarily includes the conclusion that the prior conviction came before the instant offenses. *See, e.g., United States v. Roberts*, 763 F.3d 947, 949–50 (8th Cir. 2014) (holding that it was not required for a jury to find that the defendant had a predicate conviction, despite the fact that such a conviction resulted in a life sentence under § 3559(c)(3)); *United States v. Lopez-Zepeda*, 466 F.3d 651, 654–55 (8th Cir. 2006) (rejecting a defendant's claim that the sentencing court erred by not submitting the fact of his prior conviction to a jury); *United States v. Boles*, 914 F.3d 95, 110 (2d Cir. 2019) (holding that the sentencing court did not err in finding that the defendant had the predicate offense necessary to apply the statutory mandatory minimum to his conviction for possession of child pornography); *United States v. Johnson*, 495 F.3d 536, 543–44 (7th Cir. 2007) (affirming the sentencing court finding that the defendant had the requisite predicate offense for a life sentence under § 3559(e)); *United States v. Barajas-Becerril*, 298 F. App'x 627, 628–29 (9th Cir. 2008) (holding that a defendant was not entitled to a jury finding on "the exact date of his prior removal" and there was no *Apprendi* issue).

The record supports finding that Mayer's 2012 conviction predated his instant offenses.

3

## II. If Life is Not Mandatory, the Mandatory Minimums Apply.

Mayer argues that if "mere solicitation offenses" are not predicate convictions for the purpose of applying the statutory mandatory minimums under 18 U.S.C. §§ 2251(e), 2252(b), then his conviction for attempted third degree criminal sexual conduct is also not a predicate conviction. (Def.'s Sent. Position at 6–7). Mayer essentially argues that his prior conviction is the legal equivalent of "mere solicitation." This is not true.

The statutes governing Mayer 2012 conviction criminalized the attempt to engage in sexual penetration with someone who was between the ages of 13 and 15 when the perpetrator was at least two years older than the victim. *See* Minn. Stat. §§ 609.17, subd. 1 and 609.344, subd. 1(b) (2010). Attempt required the defendant take a "substantial step toward," and not simply "prepare for," committing the offense. *See* Minn. Stat. § 609.17, subd. 1. "Sexual penetration" included, in relevant part, "sexual intercourse, cunnilingus, fellatio, or anal intercourse." Minn. Stat. § 609.341, subd. 12 (2012).[1] Thus, to be convicted of attempted third degree criminal sexual conduct, a defendant had to take a substantial step towards engaging in sexual intercourse, cunnilingus, fellatio, or anal intercourse with some between the ages of 13 and 15 when the defendant was at least two years older than the victim.

---

[1] Available here: https://www.revisor.mn.gov/laws/1998/0/367/ (showing Minn. Stat. § 609.341, subd. 12 as amended in 1998). It does not appear that Minn. Stat. § 609.341, subd. 12 was amended again until 2019. *See* https://www.revisor.mn.gov/laws/2019/1/5/

4

This is not conduct comparable to "mere solicitation" or statutes defining solicitation. Instead, it is conduct "relate[d] to," at a minimum, "abusive sexual contact involving a minor." *See* 18 U.S.C. §§ 2251(e), 2252(b). Many courts have held as much when assessing comparable statutes. (*See* Govt.'s Sent. Position at 23–24 [Dkt. 246]).

To the extent Mayer argues that because his earlier conviction was for attempt it cannot be a predicate offense, he is incorrect. Numerous courts have held that a prior conviction for attempt qualified as a predicate under §§ 2251(e) or 2252(b). *See, e.g., United States v. Stults*, 575 F.3d 834, 845–46 (8th Cir. 2009) (defendant's prior conviction for attempted sexual assault of a child was a predicate offense); *United States v. O'Neal*, 835 F. App'x 70, 72–73 (6th Cir. 2020) (finding that the defendant's prior conviction for attempted first degree sexual abuse was a predicate offense and rejecting his argument that attempt changed the analysis, "It would distort common sense to say that attempting an act that would constitute sexual abuse does not relate to sexual abuse. If attempts did not relate to their intended outcome, how else could their relationship be explained?"); *United States v. Wiles*, 642 F.3d 1198, 1201–02 (9th Cir. 2011) (defendant's prior conviction for attempted sexual assault was a predicate offense); *United States v. Hubbard*, 480 F.3d 341, 344–46 (5th Cir. 2007) (holding that the district court erred when failed to find that the defendant's prior conviction for attempted lewd or indecent proposal to engage in sexual relations was a predicate offense under § 2252(b)).

The record and case law are clear that Mayer's 2012 conviction triggers the statutory mandatory minimums of 18 U.S.C. §§ 2251(e) and 2252(b).

### III. The Defendant's Objections to the Sentencing Guidelines Lack Merit.

Mayer's objections to the Guidelines calculation are meritless. Mayer's Sentencing Position simply reasserted many of his prior objections to the PSR. (*Compare* Def.'s Sent. Position at 7–14 *with* Dkt. 228 (Def.'s Objs. to Prelim. PSR)). To the extent he lodges new objections, or attempts to expand upon his prior objections, the Court should deny those efforts. *See United States v. Dokes*, 872 F.3d 886, 888–89 (8th Cir. 2017) (upholding sentencing court's refusal to allow the defendant to supplement his objections days before sentencing).

The objections Mayer has raised lack merit and should be overruled. To the extent Mayer asserted new objections in his sentencing position, or the Government did not previously address an objection, it does so here.

#### A.   The obstruction enhancement applies.

Mayer objects to application of the obstruction enhancement (U.S.S.G. § 3C1.1). (Def.'s Sent. Position at 9, 10, 11 (objecting to final PSR paragraphs 34, 51, 59, and 70)). His objection is that the incidents cited in the PSR were not established in the record. (*Id.*). Mayer is incorrect. The record shows that Mayer engaged in at least four forms of obstruction: (1) he lied during his trial testimony; (2) he shouted at a juror in an attempt to cause a mistrial; (3) he threatened law enforcement and the prosecution team; and (4) he threatened Minor A in an attempt to prevent her from reporting the crimes he committed. Any one of these is sufficient to apply the

obstruction enhancement, and taken together, they overwhelmingly support such application

### 1. The Defendant committed perjury at trial.

At trial, Mayer testified falsely that Minor A knew his real name, that he was 30 years old, and about his "criminal background. (Trial Tr. Vol. IV at 774:24 – 776:10; Trial Tr. Vol. V at 857:14 – 860:25, 918:12–15). The fact that this testimony was a lie is clear from the other evidence. Minor A adamantly and repeatedly denied that Mayer ever told her the truth about himself—instead, he always portrayed himself as "Tyler Cole," an 18-year-old boy who worked hard to care for his daughter and at most sometimes struggled with substance abuse. Had Mayer told 15-year-old Minor A that he was actually a 30-year-old convicted sex offender who made up having a daughter (and certainly was never actively caring for whomever he was referring to), she never would have communicated with him, let alone sent him the sexually explicated images he asked her to make. (Trial Tr. Vol. III at 517:20–22, 519:13–23, 521:9–14, 521:18 – 522:18, 526:20 – 527:23, 531:24 – 532:15, 533:7–16, 538:24 – 539:9, 544:20 – 545:15, 548:21–22). The jury clearly credited Minor A's testimony over Mayer's—the Court should as well.

Moreover, there is no evidence in the record to support Mayer's claim that he told Minor A the truth about himself. Mayer and Minor A agree that they texted or chatted hundreds, if not thousands, of times each day. (Trial Tr. Vol. III at 522:21 – 523:3, 523:14 – 524:2). Nowhere in the more than 23,000 messages between Mayer

7

and Minor A does Mayer communicate the truth about himself (*i.e.*, 30-year-old registered sex offender with no daughter).  (*See* Trial Ex. 110).

Mayer's untruthful testimony alone is enough to apply the obstruction enhancement.  When the basis for the enhancement is perjury, a court must find, by a preponderance of the evidence, that the defendant willfully testified falsely about a material matter.  *United States v. Shelabarger*, 770 F.3d 714, 718 (8th Cir. 2014).  The willfulness and falsity of Mayer's testimony are obvious.  That leaves only whether Minor A's knowledge of what Mayer was (*i.e.*, a 30-year-old convicted sex offender named Travis Mayer) was material.  And of course, it was.

Mayer's primary defense at trial was that Minor A loved him and, entirely of her own volition, sent him sexually explicit images of herself.  This defense attempted to challenge an element of the three most serious charges against him—whether Mayer used, persuaded, induced, enticed, or coerced Minor A to produce child pornography.  Minor A's unequivocal testimony that she never would have communicated, or done anything else, with Mayer had she known who he was, undermined Mayer's defense. So, Mayer tried to remedy this problem by testifying falsely that Minor A knew the truth about him.  That testimony was false, Mayer's conduct in giving it was willful, and the subject matter was material to the case.  Thus, the obstruction enhancement applies.  *See Shelabarger*, 770 F.3d at 719 (upholding application of obstruction enhancement where receipt of child pornography defendant testified falsely at trial); U.S.S.G. § 3C1.1, cmt. 4(B) (listing perjury as a basis for applying the obstruction enhancement).

### 2. The Defendant yelled at a juror and threatened law enforcement and the prosecution team to try and obstruct his prosecution.

Mayer's plans to cause a mistrial are well known to the Court. (*See* Govt.'s Trial Br. at 23–24). At trial, he tried to make good on those plans. After the jury found Mayer guilt on all eight counts, applied forfeiture, and found the facts necessary to send him to prison for life, he created a disruption by yelling as one of the jurors, calling that juror out by name. (Trial Tr. Vol. VI at 1030:19–20). This was a clear effort at intimidation. (*Id.*). Mayer yelled something suggesting that he bribed the juror to find him not guilty and the juror now owed Mayer money. (*Id.*). The Court ordered Mayer to comport himself and be quiet, but Mayer continued talking and flashed a double thumbs-up to the bench. The Court found Mayer in contempt. (*Id.* at 1030:24–25). Mayer's attempt to create a mistrial issue through this disruption is sufficient to apply the obstruction enhancement. *See United States v. Evans*, 908 F.3d 346, 355–56 (8th Cir. 2018).

Mayer also threatened law enforcement and the prosecution team. Shortly after his arrest on federal charges, and after receiving discovery that included reports by Detective Kohl (who apprehended Mayer and was responsible for uncovering his crimes), Mayer sent Detective Kohl a hate-filled letter wherein he threatened that she "didn't have the guts" to "say or do this [make incriminating statements against Mayer] to my face, you know what would have happened." (*See* Letter from Mayer to Det. Kohl, Ex. I [Dkt. 104-1]; Evid. Hr'g Tr. at 48:15 – 49:5, 50:10 – 51:6, 52:24 – 54:11, 66:11 (Mayer testifying that he sent this letter to Detective Kohl and admitting

that it might "cause concerns" from a law enforcement perspective) [Dkt. 104-2]). Mayer also wrote to his brother, "Before I leave here, I promise on Dad – I'll get even with these fuckers [referring to the AUSAs]." (*See* Letter from Mayer dated 8/10/19, Ex. H [Dkt. 104-1]; Evid. Hr'g Tr. at 67:1 – 68:18 (admitting to sending this letter and including the threat to "see what would happen") [Dkt. 104-2]).

These are just a few of the threats Mayer directed at the prosecution team throughout this case. Mayer's attempts to intimidate those who would testify against him and who were responsible for his prosecution, even though unsuccessful, are a sufficient basis to apply the obstruction enhancement. *See United States v. Vera-Gutierrez*, 964 F.3d 733, 737 (8th Cir. 2020) (implicit and unsuccessful threat against a witness supported obstruction enhancement); *United States v. Nunn*, 940 F.2d 1128, 1130–33 (8th Cir. 1991) (implicit telephone threat to potential witness was sufficient to apply obstruction enhancement); U.S.S.G. § 3C1.1, cmt. 4(A) (noting threats against a witness as a basis to apply the obstruction enhancement).

### 3. The Defendant threatened the victim in an attempt to prevent her from reporting his crimes.

Most troubling are Mayer's threats against a child. The record shows that Mayer threatened Minor A in an attempt to prevent her from reporting his crimes. Specifically, Mayer threatened to send the sexually explicit images of Minor A to her family and friends, and then post them online, if she reported him. When that did not work, Mayer threatened that if Minor A reported him, she too would be charged with a crime. As Minor A described it:

10

> And he just kept saying really horrible things about me or about family and threatening to post my pictures on the internet, my nude pictures on the internet, or sending them to family members.
>
> I finally got enough and was -- at that point didn't really know what to do, so I went to my mom about it. And he started telling my mom that I was the liar and that I'm going to go to jail, I'm going to get in trouble or we were going to get in trouble, <u>that if he was going to get in trouble, then I was going to go down with him</u>.
>
> The last couple, like, messages or whatever that I ever saw from him was that he wanted to make my life miserable. <u>He told me that he's going to do anything and everything to make my life miserable</u>.

(Trial Tr. Vol. III at 540:19 – 541:13 (emphasis added); *see also* Trial Exs. 111cc, 132). Mayer sent Minor A some of the sexually explicit images he had of her, so she would know that he could make good on this threat. (Trial Tr. Vol. III at 542:7–14).

Mayer's attempts to intimidate Minor A so she would not report him support application of the obstruction enhancement. *See* U.S.S.G. § 3C1.1, cmt. 4(K) (listing threating a victim in an attempt to prevent reporting as conduct triggering the enhancement); *United States v. Roberts*, 642 F. App'x 645, 646–47 (8th Cir. 2016); *United States v. Charette*, 220 F. App'x 721, 723 (9th Cir. 2007) (holding that the defendant's threat to make the victim's "life a living hell" if she reported his abuse was a sufficient basis to apply the obstruction enhancement).

### B. The enhancements for distribution apply.

Mayer objects to application of the enhancements for distribution of child pornography (U.S.S.G. §§ 2G2.1(b)(3) and 2G2.2(b)(3)(F)). (Def.'s Sent. Position at 10–11, 11–12 (referring to final PSR paragraphs 47, 63)). The objection appears to

11

be only to the factual basis for application.  (*See id.*).  The record is more than sufficient to find that Mayer distributed child pornography.

As described above, to intimidate Minor A, Mayer sent her multiple sexually explicit images of herself (*i.e.*, child pornography) as proof of what he could send to her friends and family.  This alone is sufficient to apply the enhancements for distribution.[2]

Mayer also engaged in additional distribution as well.  Mayer had user accounts to and frequently visited (often dozens or even hundreds of times a day) a Russian website popular with pedophiles like him.  (Govt.'s Sent. Position at 33–34).  FBI Special Agent Blackmore testified about how pedophiles utilize this site to distribute child pornography amongst themselves, either directly (by posting it to the website) or communicating with each other on the site and exchanging child pornography through other means (e.g., email).  (Trial Tr. Vol. III at 627:18 – 628:3; 649:7–24).  Mayer did not just passively browse the Russian child pornography site, he set up user accounts that enabled him to edit and post material to the site.  (Trial Exs. 14 and 124).  To the extent Mayer's argument is that the Court cannot consider

---

[2] There is no risk of double counting, despite the fact Mayer was independently convicted of distribution of child pornography (Count 3, 18 U.S.C. § 2252(a)(2)). Count 3 groups with the production of child pornography count (Count 1) that relates to the images Mayer first used Minor A to produce, then distributed back to her as a threat. (*See* PSR at ¶¶ 44–52). The distribution of child pornography is not inherent in the production of the same and represents a distinct harm, thereby justifying the enhancement. *See United States v. Murphy*, 792 F. App'x 232, 236 (3d Cir. 2019) (holding that uncharged distribution of child pornography may serve as the basis for applying the distribution enhancement (U.S.S.G. § 2G2.1(b)(3)) to the defendant's conviction for production of child pornography).

evidence he distributed uncharged images of child pornography, this is wrong as a matter of law. All of Mayer's interactions with child pornography qualify as relevant conduct that the Court may consider when deciding the distribution enhancements. *See United States v. Sullivan*, 414 F. App'x 477, 480 (3d Cir. 2011).

### C. The enhancement for the number of images of child pornography possessed applies.

Mayer objects to application of the enhancement for possessing more than 600 images of child pornography (U.S.S.G. § 2G2.2(b)(7)(D)). (Def.'s Sent. Position at 12 (referring to final PSR paragraph 67)). His objection is to the factual basis for this enhancement. Mayer ignores the substantial trial record that establishes he possessed well over 600 images on child pornography.[3] FBI Forensic Examiner Klemz testified that she examined Mayer's 2017 and 2018 Phones and discovered child pornography in each, organized into folders with names like "kiddy porn heaven," "kid smut," and "new kiddy porn". (Trial Tr. Vol. II at 287:10 – 288:24, 292:14 –294:8, 354:16 – 355:2, 358:21 – 359:14, 362:17 – 363:17, 393:4 – 394:8, 396:19 – 397:9; *see also* Trial Ex. 23). Examiner Klemz estimated that she found "several hundred," which she clarified was at least five to six hundred, images of child pornography on just Mayer's 2017 Phone. (Trial. Tr. Vol. II at 293:10–12, 307:8–14). Special Agent Blackmore confirmed that Mayer's 2017 and 2018 Phones contained

---

[3] To the extent Mayer's argument is that the Court itself must view all of the child pornography on his 2017 and 2018 Phones, and count the images itself, this is incorrect—the Court many rely on the testimony of others. *See United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009); *United States v. Wright*, 464 F. App'x 475, 481–82 (6th Cir. 2012)

many images of child pornography.  (*See* Trial Tr. Vol. III at 635:3 – 639:1, 640:13 – 643:9, 650:24 – 651:24; Trial Tr. Vol. IV at 703:13 – 704:4).  Examples of these images of child pornography were introduced as exhibits.  (Trial Exs. 24, 27, 97, 99, 101, 103).  Mayer himself admitted on that on his 2018, he had child pornography that depicted other minors who he exploited after Minor A.  (Trial Tr. Vol. V at 830:1–14, 903:22 – 910:4).  This is enough for the Court to find, by a preponderance of the evidence, that Mayer possessed more than 600 images of child pornography.

Dated:  January 21, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　CHARLES J. KOVATS, JR.
　　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　　　　　*/s/ Alexander D. Chiquoine*

　　　　　　　　　　　　　　　　BY:　　ALEXANDER D. CHIQUOINE
　　　　　　　　　　　　　　　　　　　　JOSEPH H. THOMPSON
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys